USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/07/2014

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------x
                    :

UNITED STATES OF AMERICA     :

         -v.-         :      14 Cr. ___460___ (LGS)

BNP PARIBAS S.A.,     :

        Defendant.    :

                    :
--------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW**
**IN RESPONSE TO THE JULY 1, 2014 ORDER**

## I.    Introduction

In response to the Court's July 1, 2014 Order, Defendant BNP Paribas

S.A. ("BNPP" or the "Bank") respectfully submits that the June 27, 2014 plea agreement

between the United States and BNPP (the "Plea Agreement") provides an appropriate

resolution to this matter for the reasons set forth below as well as the reasons set forth in

the Government's concurrent submission.[1]

The Plea Agreement resulted from a rigorous and comprehensive process

and represents an unprecedented penalty. (Govt. Mem. at 2.)  The Plea Agreement is a

key component of a global resolution between the Bank and multiple state and federal

---

[1]    Where possible, this brief does not duplicate areas covered by the Government's
July 7, 2014 Memorandum of Law ("Govt. Mem.").  In order to meet the Court's
deadline, it was easier for the parties to make separate submissions.

prosecutors and regulators,[2] some of which have imposed additional regulatory remedies. The Bank and these governmental entities agreed to the Plea Agreement (and other agreements summarized in Section II.C. of the Government's submission) following years of investigation and months of negotiation.

       The Plea Agreement is also substantively appropriate.  The Bank has agreed to plead guilty to conspiring to violate U.S. sanctions laws, and to pay nearly $9 billion in fines and forfeitures, resulting from the Bank's past processing of transactions on behalf of Sudanese Cuban, and Iranian entities.  This unprecedented resolution is far more severe than resolutions of prior sanctions cases, in the words of Assistant Attorney General Caldwell, "historic," and reflects both the seriousness of the Bank's illegal conduct and several mitigating factors (including the Bank's voluntary remediation efforts, cooperation with government authorities, and employee disciplinary actions).

       In sum, the Bank respectfully submits that this Court's acceptance of the Bank's plea would be in the interests of justice.

## II.    Background

       As described in the Statement of Facts attached to the Plea Agreement, through 2007, Bank personnel in France and Switzerland engaged in a variety of business with Sudanese, Cuban, and Iranian clients, and certain transactions were denominated in U.S. dollars and therefore required "clearing" payments through financial institutions in the United States.  During 2007 and early 2008, the Bank issued policies calling for the

---

[2]     These entities include including the U.S. Department of Justice ("DOJ"), the New York County District Attorney's Office ("DANY"), the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), the Board of Governors of the Federal Reserve System ("Federal Reserve"), and the New York State Department of Financial Services ("DFS").

cessation of new business involving these countries.  However, the Bank continued to engage in limited business involving these countries, some of which involved clearing payments through U.S. financial institutions, after these policies were put in place.

This criminal matter began in December 2009, when DANY contacted the Bank to inquire about the Bank's participation in certain financial transactions involving entities and countries subject to U.S. economic sanctions.  In early 2010, the Bank, DOJ and DANY agreed that the Bank's counsel would conduct an internal investigation and report its findings to state and federal officials.

The Bank has provided substantial cooperation to the Government in the investigation and resolution of this matter.  (Statement of Facts ¶ 74.)  This cooperation included:  conducting an extensive transaction review to identify potential violations; responding to numerous requests for information; reviewing, translating and producing voluminous records from foreign jurisdictions; effecting limited waivers of attorney-client privilege; entering into tolling agreements; interviewing dozens of current and former employees in the United States and Europe; and working with the Government to obtain assistance via a Mutual Legal Assistance Treaty with France, among other things. All told, BNPP has spent more than $200 million on its investigation.

During 2014, the Government and the Bank engaged in extensive negotiations concerning (among other things) whether the Bank would be required to plead guilty to a criminal offense and the amount of the proposed forfeiture; and the Bank separately negotiated additional remedies sought by banking regulators.  The Bank also sought additional regulatory approvals or waivers that would be required from other

government agencies to avoid putting the Bank out of business and disrupting the financial markets.

### III.     The Plea Agreement and Other Settlement Documents

On June 29, 2014, the Bank and government officials finalized a coordinated, global resolution to this matter and entered into a set of agreements with DOJ, DANY, OFAC, the Federal Reserve, and DFS.[3]

As set forth in the Government's brief, the Bank agreed: (1) to plead guilty in this Court to conspiracy to violate U.S. sanctions laws; (2) to plead guilty in New York state court to conspiracy and to falsifying business records; (3) to pay a $140 million fine; (4) to pay a forfeiture of $8.83 billion forfeiture (to be shared by various government agencies); (5) to submit to a five-year term of probation; (6) to extend the term of a regulatory monitor; and (7) to suspend certain of its U.S. dollar clearing operations. (*See* Govt. Mem. Sections II.B. and C.)

Other terms of the global resolution include:  the Bank's agreements with the Federal Reserve and DFS that the Bank will never in the future retain in any capacity certain identified employees who either were separated from the Bank or terminated as part of the investigation in the Bank's past conduct; an agreement with the Federal Reserve and the ACPR to improve upon and provide regular reports regarding its compliance function; an agreement with OFAC to provide it with copies of all submissions made to the Federal Reserve; and agreements with DOJ and DANY to

---

[3]     The Bank and various U.S. governmental entities also have engaged in discussions with the Bank's home-country regulator, the Autorité de Contrôle Prudentiel et de Résolution ("ACPR"), as well as other financial regulatory authorities.

provide on-going cooperation regarding this matter, including providing them with copies of the monitor's reports submitted to the Federal Reserve or DFS.

Additionally, as the Government's submission indicates, these various agreements are interrelated, and in certain cases are effective only on the condition that the agreements are accepted and become effective. Crucially, if this Court rejects the Plea Agreement or fails to impose a sentence consistent therewith: the Plea Agreement shall be null and void at the option of either the DOJ or the Bank; and the plea agreement between DANY and the Bank shall be null and void, and DANY and the Bank will be released from any obligations imposed upon them by that plea agreement.

## IV.     The Plea Agreement is a Fair and Appropriate Resolution.

As described above, the process by which the Plea Agreement was entered into was rigorous. The Bank and several governmental entities conducted lengthy, extensive investigations. The parties engaged in months of negotiation regarding the appropriate resolution of this matter.

Significantly, the Bank has agreed to a resolution far harsher than that imposed on prior violators of U.S. sanctions. The Bank acknowledges and accepts responsibility for the severity of its past conduct, as described in the Statement of Facts and summarized in Section II.A. of the Government Brief. But BNPP's plea "is the first time a global bank has agreed to plead guilty to large-scale, systematic violations of U.S. economic sanctions."[4] The Bank's monetary payment of nearly $9 billion "would

---

[4]     Dept. of Justice, *BNP Paribas Agrees to Plead Guilty and to Pay $8.9 Billion for Illegally Processing Financial Transactions for Countries Subject to U.S. Economic Sanctions* (June 30, 2014), at http://www.justice.gov/opa/pr/2014/June/14-ag-686.html (the "DOJ Press Release"). Indeed, BNPP is only the

constitute—by far—the largest penalty ever obtained by the [DOJ] in a criminal economic sanctions case, and the largest penalty in any criminal case involving a bank."[5] Indeed, this is far greater than all payments in prior sanctions cases *combined*; is more than 14 times higher than the largest prior settlement in a sanctions case[6]; and it is "orders of magnitude" greater, indeed 120 times, than the Bank's direct profits from the transactions (Govt. Mem. at 13). And, no bank has ever been required to accept the suspension of U.S. dollar clearing imposed by the DFS on certain business lines of the Bank' affiliates.

In addition, the Bank has made and continues to make substantial efforts toward improving its compliance function. (*See* Statement of Facts ¶ 74.) As presented to the Government in December 2013, the Bank's remediation efforts include: (a) the creation of new Global Financial Security center in New York, distinct from the Bank's New York branch, that will focus on U.S. embargo compliance and controls; (b) the deployment Bank-wide of an upgraded filtering tool; (c) the creation of a Group Internal Control Committee, chaired by the Chief Executive Officer, to oversee compliance awareness; and (d) the creation of a new Bank-wide business line, USD Clearing and Payments, responsible for central supervision of USD payment flows and clearing across the entire Bank.

---

second major bank in recent years to plead guilty to *any* crime, following Credit Suisse's May 2014 plea for aiding tax evasion.

[5]   Dept. of Justice, *Remarks by Assistant Attorney General Leslie R. Caldwell at BNP Paribas Press Conference* (June 30, 2014), at http://www.justice.gov/criminal/pr/speeches/2014/crm-speech-140630.html.

[6]   ING Bank agreed to forfeit $619 million as a result of processing payments on behalf of sanctioned entities. *See* Dept. of Justice, *ING Bank N.V. Agrees to Forfeit $619 Million for Illegal Transactions with Cuban and Iranian Entities* (June 12, 2012), at http://www.justice.gov/opa/pr/2012/June/12-crm-742.html.

Additionally, the Bank formally disciplined more than forty employees in connection with the conduct at issue here.  Several very senior BNPP officers were separated from the Bank or had their employment terminated, including its former Chief Operating Officer; the former Head of Group Compliance; the former Group Head of Structured Finance; the former Group Head of Debt Capital Markets; and a former attorney in the Bank's Corporate and Investment Banking Legal Department.  Further, as part of its review of employee conduct, and as presented to the Government in December 2013, the Bank has added a Compliance Objective to the appraisals of thousands of senior managers across the Bank.

In the words of Attorney General Eric Holder, the DOJ is "holding the bank accountable" for its violations, BNPP is being "punished to the fullest extent of the law," and BNPP is "taking a variety of steps to provide substantial assistance to the government—and to ensure that, moving forward, they will operate in full compliance with U.S. law."[7]  The Plea Agreement is the result of a detailed investigation and extensive negotiation, and represents an integral part of a comprehensive resolution of this matter.  Moreover, OFAC has commented favorably on BNPP's remedial efforts.[8]  BNPP respectfully joins with the Government in urging that the Court accept the Plea Agreement.

---

[7]   Dept. of Justice, *Attorney General Holder Delivers Remarks at Press Conference Announcing Significant Law Enforcement Action* (June 30, 2014), at http://www.justice.gov/iso/opa/ag/speeches/2014/ag-speech-1406301.html.

[8]   OFAC recognized in its settlement agreement that the Bank had taken global remedial actions, had prioritized compliance from the top levels of the Bank's senior management, had cooperated with OFAC by conducting an extensive internal investigation, and that OFAC had not issued a penalty notice or Finding of Violation to BNPP in the five years preceding the transactions at issue here. (OFAC Settlement Agreement, June 30, 2014, ¶¶ 23-35.)

Dated:   New York, New York
         July 7, 2014

                                    Respectfully submitted,


                                    Karen Patton Seymour
                                    (seymourk@sullcrom.com)
                                    SULLIVAN & CROMWELL LLP
                                    Telephone:  (212) 558-4000
                                    Facsimile:  (212) 558-3588
                                    125 Broad Street
                                    New York, NY  10004

                                    *Attorneys for BNP Paribas S.A.*