IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   14-CR-00460

U.S.A                                                  :
                                                       :
Plaintiff                                              :         Amended Notice of
                                                       :         Lien and
v.                                                     :         Memorandum of Law
                                                       :
Paribas                                                :
                                                       :
Defendants, et al.                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**<u>Amended Notice of Lien and Memorandum of Law</u>**

Marilyn Wiederspan, ("Wiederspan"), by and through undersigned counsel, respectfully submits this Amended Notice of Lien and requests that the court not allow disbursement of funds in USA v. Paribas, No. 14-CR-00460, until this lien is satisfied. As grounds thereof, Wiederspan states as follows:

In January 2012, Wiederspan obtained a Florida state court judgment against Cuba and its related entities. Wiederspan filed a Notice of Lien ("Notice") (Dkt.29) in this action on January 29, 2015. Attached to the Notice are numerous documents substantiating Wiederspan's judgment. Undersigned counsel subsequently filed a Motion for Pro Hac Vice appearance (Dkt.31) on February 10, 2015, and on the same date, the Clerk of Court filed a notice indicating that the document had been reviewed and that there were no deficiencies. Shortly prior to filing the Notice, undersigned counsel contacted counsel for the United States of America ("USA") in this action, and informed them of Wiederspan's interest in the funds to be forfeited and decision to file the Notice. Counsel for USA did inform undersigned counsel that they were reviewing the Notice. As of the date this Amended Notice was filed, counsel for USA has not submitted a written or oral response to Wiederspan's Notice.

In the Statement of Facts, USA makes numerous references to Cuba's interests in the forfeited funds. In fact, there is a specific reference to monies belonging to Cuba, where USA claims: "The purpose of the credit facilities was to provide financing to Cuban entities" and another example mentions how Paribas helped Cuba obtain "US dollar loans for one of Cuba's largest state-owned companies." There are also other examples throughout the Statement of Facts, one of which is as follows:

"Beginning at least as early as 2000 and continuing through 2010, BNPP participated in eight Cuban Credit Facilities that involved U.S. dollar clearing and that were not licensed by OFAC. The Cuban Credit Facilities were managed out of BNPP Paris, and each facility processed hundreds (and in some cases thousands) of U.S. dollar transactions in violation of U.S. sanctions. The purpose of the credit facilities was to provide financing for Cuban entities and for businesses seeking to do U.S. dollar business with Cuban entities. One such facility, for example, involved the U.S. dollar loans to a Dutch company to finance the purchase of crude oil products destined to be refined in and sold to Cuba. Another credit facility involved U.S. dollar loans for one of Cuba's largest state-owned commercial companies ("Cuban Corporation 1"), which was designated by OFAC as an SDN".

If Paribas approved loans for Cuba to buy oil, or for any other similar purpose, then after approval, the funds belonged to Cuba.

In further support of Wiederspan's interest in this matter, we submit the following additional information and case law.

(A)   <u>Summary of Argument</u>

12 United States Code, section 853 ("12 USC 853") governs criminal forfeiture proceedings. A third party interested in the funds to be forfeited must show: (1) superior right

,title, or interest to that of the defendant at the time of the commission of the acts that gave rise to the forfeiture or, (2) that he/she is a bona fide legal purchaser.  12 USC 853(m)(6)(A) & B.

In such proceedings, Federal courts have often recognized the need to fashion a constructive trust on behalf of a petitioner when equity requires it. The law of the state where the funds is held are applicable to the forfeiture proceeding. Under New York ("NY") law money judgment creditor such as Wiederspan can attach to any real and personal property of the debtor.

Under NY law a constructive trust is an equitable remedy imposed to prevent unjust enrichment. Simonds v. Simonds, 45 NY2d 233, 242 (1978).  What is required, generally, is that the complaining party have a right or interest in property wrongfully held by another party "under such circumstances that in equity and good conscience he ought not to retain it." Miller v Schloss, 218 NY 400, 407 (1916); Sharp v Kosmalski, 40 NY2d 119, 123, (1976).

In the case at bar, all of the elements have been met for the creation of a constructive trust.  Namely, (1) there existed a confidential, fiduciary, and fraudulent relationship between Paribas and Cuba; (2) a promise existed whereby Paribas would surreptitiously hide Cuba's assets; (3) Cuba transferred the funds to Paribas; (4) both Cuba and Paribas ought not to have retained the funds, and (5) Wiederspan has a demonstrated interest in those assets as evidenced by her judgment lien.

The Second Circuit in Willis Management (Vermont), Ltd v. United States, 652 f.2d 236 (2d Cir. 2011) perhaps best describes Wiederspan's interest in the funds at issue: "Nothing about 21 U.S.C. § 853(c) suggests that the United States' interest trumps that of all other parties. On the contrary, § 853(c) states that even though the United States' interest "vests" "upon the commission of the [criminal] act,"… a third party could show, pursuant to § 853(n)(6)(A), that it has a "legal . . . interest" in the property superior to the defendant's. <u>This is true because if a</u>

<u>constructive trust properly should be imposed on particular property that was in the possession of the defendant, it was never truly the defendant's property and is not subject to forfeiture to the United States in the first instance</u>." (emphasis added).

Based on the facts in this matter a constructive trust should be formed on behalf of Wiederspan.

The Florida state court found that: " It is clear from the evidence that Cuba was designated to be a state sponsor of terrorism in 1982, at least in part by reason of the acts of terrorism described herein including the torture and extra-judicial killing of Jose Velasquez Fernandez, and that all statutory criteria for the exercise of jurisdiction under this statute [the FSIA] over a claim against Defendant Cuba and the remaining Defendants (who are agents or instrumentalities of Defendant Cuba) have been established by evidence satisfactory to the Court." It is for these same reasons that the USA has forbidden persons to subject to the jurisdiction of the United States from doing business with Cuba. Trading With the Enemy Act, 50 U.S.C. App. §§§§ 1-44 ("TWEA"); Cuban Assets Control Regulations, 31 CFR Part 515. (TWEA). The TWEA and implementing regulations are meant to protect the victims such as Wiederspan.

Furthermore, Wiederspan has filed a complaint in the Southern District of New York to domesticate the Florida state court judgment. If and when the default judgment is entered in that case, Wiederspan will file a subpoena and restraining order in USA v. Paribas to request that the appropriate funds be frozen and eventually paid to satisfy the debt.

**ARGUMENT**

**(1)     NEW YORK LAW REQUIRES THAT A CONSTRUCTIVE TRUST BE FORMED ON BEHALF OF WIEDERSPAN**

Subsection 853(n) of Title 21 of the United States Code specifically governs third- party interests in criminal forfeiture ancillary proceedings. When a third party asserts a legal interest in property forfeited to the Government, the Court must hold a hearing to adjudicate the validity of the alleged interest in the property. 21 U.S.C. § 853(n)(2); United States v. Ribadeneira, 105 F.3d 833, 834 (2d Cir. 1997). At this hearing, the Court determines whether:

(A) the petitioner has a legal right, title, or interest in the property . . . [that] was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section . . . .

The petitioner has the burden of proof to demonstrate that he meets one of these two categories. See Pacheco v. Serendensky, 393 F.3d 348, 351 (2d Cir. 2004). If the court determines by a preponderance of the evidence that the petitioner falls within either of these two categories, the court must amend the preliminary forfeiture order. 21 U.S.C. § 853(n)(6). The court must then restore the properly apportioned part of the seized property to the third party petitioner. Id. Following the court's disposition of all third party petitions, the Order of Forfeiture, as amended based on the disposition of all petitions, gives the Government "clear title to property that is the subject of the order of forfeiture." 21 U.S.C. § 853(n)(7).

Wiederspan believes that the facts in this matter and New York case law require that a constructive trust be formed. In applying the constructive trust theory to forfeiture cases under 11 U.S.C. Section 853, courts have held that the property impressed with the trust is not subject to forfeiture[1]. The Eleventh Circuit held in United States v. Shefton that a constructive trust is a cognizable "legal interest" sufficient to assert an interest under the forfeiture statutes[2]. Several other circuits have similarly found that where property was taken from a third party by fraud, a constructive trust is imposed over the property held by the criminal defendant[3].

However, in United States v. BCCI Holdings (Luxembourg), the court held, "[A] constructive trust may not be used to defeat the government's forfeiture claim[4]." The Shefton court, nevertheless, rejected the BCCI court's holding that a constructive trust does not arise until determined by a court[5]. The Shefton court further criticized the BCCI court's conclusion that the third party must establish that its interest is superior to the governments, as opposed to superior to the criminal defendant's[6]. (emphasis added).

Under New York law, most simply explained, a constructive trust is an equitable remedy imposed to prevent unjust enrichment (see Simonds v Simonds, 45 NY2d 233, 242 [1978]; Sharp

---

[1] See, e.g., United States v. Shefton, 548 F.3d 1360, 1366 (11th Cir. 2008); United States v. $4,224,958.57, 392 F.3d 1002, 1004-05 (9th Cir. 2004); U.S. v. Schwimmer, 968 F.2d at 1574, 1582; United States v. Marx, 844 F.2d 1303, 1308 (7th Cir. 1988); United States v. Campos, 859 F.2d 1233, 1238-39 (6th Cir. 1988).

[2] Shefton, 548 F.3d at 1366.property is therefore not subject to forfeiture.

[3] See, e.g., United States v. $4,224,958.57, 392 F.3d 1002, 1004-05 (9th Cir. 2004); United States v. Marx, 844 F.2d 1303, 1308 (7th Cir. 1988); United States v. Campos, 859 F.2d 1233, 1238-39 (6th Cir. 1988); United States v. Schwimmer, 968 F.2d 1570, 1574 (2d Cir. 1992).

[4] 45 United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d 1185, 1190-91 (D.C. Cir. 1995).

[5] Shefton, 548 F.3d at 1366.

[6] Id.; see also 21 U.S.C. § 853(n)(6)(A) (criminal forfeiture order may be vacated if "the petitioner has a legal right, title, or interest in the property . . . [that] was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture").

v Kosmalski, 40 NY2d 119 [1976]). According to the Court of Appeals, the constructive trust is "the formula through which the conscience of equity finds expression. Where property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee" (Beatty v Guggenheim Exploration Co., 225 NY 380, 386 [1919]).

A constructive trust is imposed by the law as an "equitable remedy." This generally occurs due to some wrongdoing, where the wrongdoer ("Paribas"), has acquired legal title to some property and cannot in good conscience be allowed to benefit from it. For example, a court of equity recognizing a plaintiff's ("Wiederspan") request for the equitable remedy of a constructive trust may decide that a constructive trust has been created and simply order the person holding the assets ("USA") to deliver them to the person who rightfully should have them. The constructive trustee ("USA") is not necessarily the person who is guilty of the wrongdoing, and in practice it is often a bank or similar organization.

The court in this case should recognize the need for a constructive trust. The wrongdoer, Paribas, has acquired the funds thru violations of federal laws, i.e. TWEA.  Thus, they cannot in good conscience benefit from the funds.  The court can thus recognize the equitable remedy of a constructive trust, on behalf of Wiederspan, and order that the person holding the assets, USA, should deliver them to the party, Wiederspan, who rightly should have them.  The constructive trustee is not necessarily the person who is guilty of the wrongdoing, and in practice it is often a bank or similar organization.  In our case, it's the USA that is currently holding the funds in the Department of Treasury ("DOT") suspense account.

It is an amorphous doctrine, as the constructive trust is "not limited by rigid definition and its very purpose requires flexibility in its application" (In re Alpert, 9 Misc 3d 1102[A],

*10). It therefore follows that the constructive trust "has been famously described as a remedy applicable to 'whatever knavery human ingenuity can invent'" (In re Alpert, 9 Misc 3d at *7 [Sur Ct, New York County 2005], quoting Bogert, Trusts and Trustees Sec. 471 at 29 [2d ed rev]). In fact, it is of such broad scope that attempted precise definitions have been deemed inadequate (see Simonds v. Simonds, 45 NY2d 233, 241 [1978]).

Even applicable in the case of an innocent donee, no wrongful act is necessary to find unjust enrichment warranting the imposition of a constructive trust. However, in the case of a bona fide purchaser, he or she takes property free of a constructive trust that would otherwise be imposed (5 Scott, Trusts [3d ed] sec.468).

A constructive trust "is perhaps more different from an express trust than it is similar", in that "the constructive trustee is not compelled to convey the property because he is a constructive trustee; it is because he can be compelled to convey that he is a constructive trustee." (Simonds v Simonds, 45 NY2d 233, 241 [1978], relying on 5 Scott, Trusts [3d ed], sec. 461-462]). Generally, the following elements must be established to state a claim for this type of relief: (1) a confidential or fiduciary relation; (2) a promise; (3) a transfer in reliance thereon; and (4) unjust enrichment (see Sharp v Kosmalski, 40 NY2d 119, 121 [1976]). Nonetheless, unlike most causes of action, courts do not require strict satisfaction of each element, but rather use them more as flexible considerations (Lester v Zimmer, 147 AD2d 340, 341 [3d Dept 1989]).

In the case at bar, all of the elements have been met. Namely, (1) there existed a confidential, fiduciary, and fraudulent relation between Paribas and Cuba; (2) a promise existed whereby Paribas would surreptitiously hide Cuba's assets; (3) Cuba transferred the funds to Paribas; and (4) both Cuba and Paribas were unjustly enriched.

Courts most often impose constructive trusts where traditional remedies prove inadequate or unavailable. Perhaps most illustrative in the context of trusts and estates under New York law is the landmark case of Latham v Father Divine, 299 NY 22 (1949), where the facts seemed appropriate for a claim for tortious interference with wills, a cause of action that is not recognized by New York law (see Restatement (Second) of Torts §774B [1979-2010], citing Vogt v Witmeyer, 87 NY2d 998, 999 [1996]).

In Latham, the decedent had executed a will, but later expressed a desire to create a new testamentary instrument to contain bequests to other individuals. However, due to fraud, undue influence, and ultimately murder committed by the defendant, the decedent was prevented from executing her new will.

As is often the case where a constructive trust proves to be the appropriate remedy, the Court of Appeals recognized that there was no precedent precisely on point to address the facts presented. But the Court relied upon other well-respected authorities and explained that "[w]here a devisee or legatee under a will already executed prevents the testator by fraud, duress or undue influence from revoking the will and executing a new will in favor of another or from making a codicil, so that the testator dies leaving the original will in force, the devisee or legatee holds the property thus acquired upon a constructive trust for the intended devisee or legatee" (Latham v Father Divine, 299 NY 22 , 26 [1949]).

In light of that rule, along with other analogous Court of Appeals decisions, the Court held that the imposition of a constructive trust was appropriate, as "its applicability is limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them" (299 NY at 27). The Court further stated that "a constructive trust will be erected whenever necessary to satisfy the demands of justice" (see Id.).

In coming to its conclusion, the Court cited Matter of O'Hara's Will, 95 NY 403 (1884), noting that the plaintiffs in that case successfully obtained a constructive trust in their favor, notwithstanding the fact that "disappointed hopes and unrealized expectations were all that the secretly intended beneficiaries, not named in the will, had," as well as Williams v Fitch, 18 NY 546 (1859), in which the fraud "consisted of the legatee's failure or refusal to carry out the testator's designs, after tacitly or expressly promising so to do" (see Latham, 299 NY at 27). Notably, in Latham, there was no discussion of a fiduciary or confidential relationship, one of the elements generally considered in determining the appropriateness of imposing a constructive trust.

"Although a constructive trust is a judicially recognized remedy, it arises when the underlying equities exist, not when it is announced[.]" Shefton, 548 F.3d at 1366 (internal citation omitted); see also United States v. $4,224,958.57, 392 F.3d 1002, 1004 (9th Cir. 2004). ("It is an elementary mistake to suppose that a court creates the trust."). While it is true that a court evaluates the equities after the fact, <u>if the circumstances are such that a constructive trust should be recognized, the defendant never truly acquired an interest in the property at issue and only held it as a trustee for the beneficiaries</u>. (emphasis added).

The Second Circuit in Willis Management (Vermont), Ltd. v. United States, 652 f.2d 236 (2d Cir. 2011), perhaps described the third party's interest best: "Nothing about 21 U.S.C. § 853(c) suggests that the United States' interest trumps that of all other parties. On the contrary, § 853(c) states that even though the United States' interest "vests" "upon the commission of the act," a transferee may still retain the property by showing that it was a bona fide purchaser for value. Alternatively, like Willis and Venture in this case, a third party could show, pursuant to § 853(n)(6)(A), that it had a "legal . . . interest" in the property superior to the defendant's. <u>This is

<u>true because if a constructive trust properly should be imposed on particular property that was in the possession of the defendant, it was never truly the defendant's property and is not subject to forfeiture to the United States in the first instance</u>. (emphasis added). In declining to follow BCCI Holdings, we join several of our sister Courts of Appeals that have noted criticism of that decision. United States v. Salti, 579 F.3d 656, 670 & n.18 (6th Cir. 2009); Shefton, 548 F.3d at 1366; $4,224,958.57, 392 F.3d at 1004. Finally, there is no specific conflict between recognizing a constructive trust pursuant to §853(n)(6)(A) and the remission process provided in § 853(i). Subsection 853(i) applies to "property ordered forfeited under this section" and provides a way for property already forfeited to the United States to be returned to victims. However, if the property is not forfeited in the first instance, § 853(i) simply would not apply to the property. In this case, for example, if the District Court finds that Willis and Venture have a genuine property interest in MacKay's homes and therefore imposes a constructive trust, the property would not be forfeited to the United States pursuant to § 853(n)(6)(A) and no remission process as to that property would be  necessary" Willis at 245.

## (2) The Trading With the Enemy Act ("TWEA") is Meant to Protect the US and Victims such as Wiederspan

It was Cuba's actions against people like Velasquez that form the basis for TWEA's application against Cuba. The court in Wiederspan found that: "It is clear from the evidence that Cuba was designated to be a state sponsor of terrorism in 1982, at least in part by reason of the acts of terrorism described herein including the torture and extra-judicial killing of Jose Velasquez Fernandez, and that all statutory criteria for the exercise of jurisdiction under this statute [the FSIA] over a claim against Defendant Cuba and the remaining Defendants (who are agents or instrumentalities of Defendant Cuba) have been established by evidence satisfactory to

the Court." (par. 12, page 3 of Wiederspan's Motion to Amend Final Judgment, subsequently approved by Court on January 22, 2015).

Marilyn's father was killed 56 years ago. She was only 6 years old at the time. Cuba's continued animosity and violent aggression against other US citizens, contractors and the United States in general, led to America's designation of Cuba as a state sponsor of terrorism in1982. The **Trading with the Enemy Act** of 1917 (40 Stat. 411, enacted 6 October 1917, codified at 12 U.S.C. §§ 95a–95b and 50 U.S.C. App. §§ 1—44), sometimes abbreviated as **TWEA**, is a federal law to restrict trade with countries hostile to the United States. The law gives the President the power to oversee or restrict any and all trade between the U.S. and its enemies in times of war. When the law has been violated, the country takes actions against the perpetrators. In such cases, there are obviously victims.

Wiederspan and her father were one of the earlier victims of Cuba's reprehensive behavior. She has obtained a judgment against Cuba and filed a lien against monies originally held by Paribas on behalf of Cuba. Paribas was essentially trading with the enemy, Cuba, and acting as trustee for their assets. Cuba's responsibility for Velasquez' wrongful death and assassination, traces back to February, 1959. Given the evolution of federal statutes and case law regarding terrorism against America and its citizens, it appears that plaintiff Wiederspan will finally be able to obtain a semblance of justice when her judgment is satisfied. Furthermore, it is important to recognize that, under N.Y. law, wrongful death recovery accrues to the distributee and vests in them at decedent's death. Marilyn's legal interest against Cuba, therefore, vested at the time of her father's assassination, 1959, and is a superior legal interest which pre-dates Paribas' crime which allegedly started in 2000. Alberino v. Long Island Jewish-Hillside Medical Center, 87 A.D.2d 217, 218, 450 N.Y.S.2d 857, 859 (2d Dep't 1982).

An analogy can be made between the Wiederspan case and a hypothetical case involving victims of the Nazis.   The US could have declared the Nazi government as an enemy of the US and thus restricted banks and other organizations from doing business with them. A United States citizen, or contractor of the US, could have been killed extrajudicially by the Nazis during the Holocaust.  50 years later, the decedent's family could have filed an action against the Nazis and won a monetary award.  A few years later, theoretically, the US could have sued a bank for doing business with the Nazis, who presumably, as in the case of Cuba, were still the ruling authority in Germany.  The bank could have easily agreed, as Paribas has, to forfeit the assets to the US to avoid long criminal sentences.  Prior to the actual sentencing against the bank, the victim's son could have filed a lien in the case to try to collect against his judgment. The victim had been waiting over 50 years for a form of justice, even if never adequate enough.   The victim's family is asking for less than 1/10 of 1% of the monies recovered by the US. Creating a constructive trust on behalf of the petitioner and releasing the appropriate funds, would only seem reasonable.

**(3) New York Case law Holds that a Money Judgment Attaches to the Debtor's Real and Personal Property.**

As the court indicated in In Re Euro-Swiss Intern. Corp., 33 B.R. 872 (Banker. S.D.N.Y. 1983), in New York, a money judgment may be enforced against a wide scope of property interests, including commercial leaseholds. *See* N.Y.Civ.Prac.Law § 5201(b) (McKinney 1978). *Donawitz v. Danek,* 42 N.Y.2d 138, 397 N.Y.S.2d 592, 366 N.E.2d 253 (1977) (concurring opinion J. Jasen); *Lacaille v. Feldman,* 44 Misc.2d 370, 253 N.Y.S.2d 937 (1964); *Henderson v. Tomb,* 169 Misc. 737, 8 N.Y.S.2d 612 (1938). Docketing of a judgment creates a judgment lien against real property. N.Y.Civ. Prac.Law § 5203 (McKinney 1978).

Leases are "chattels real", and "chattels real" are defined as real property. N.Y.Civ. Prac.Law § 105 (McKinney 1978). A lien on such property may thus be effected by the docketing of a judgment pursuant to N.Y.Civ.Prac.Law § 5203 (McKinney 1978) and an execution may thus be issued pursuant to N.Y.Civ.Prac.Law § 5230 (McKinney 1978).

The relevant sections of New York law were N.Y. Civ. PRAC. LAW §§ 5201, 6202 (McKinney 1978). Section 6202 is titled "Debt or property subject to attachment; proper garnishee" and provides, in pertinent part: "Any debt or property against which a money judgment may be enforced **...**is subject to attachment. The proper garnishee of any such property or debt is the person designated in section 5201**.. "** Section 5201 describes debt or property subject to enforcement and the proper garnishee for the particular property or debt. Specifically, the provision in controversy, section 5201 stated:

(a) Debt against which a money judgment may be enforced. A money judgment may be enforced against any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor, whether it was incurred within or without the state, to or from a resident or nonresident, unless it is exempt from application to the satisfaction of the judgment. A debt may consist of a cause of action which could be assigned or transferred accruing within or without the state. N.Y. Civ. PRAC. LAW § 5201 (McKinney 1978).

The Lacaille v. Feldman court found that:

" Considering, as I do, that Feldman's interest is in a 'chattel real' or 'real property'—a quasi-real property interest—I note that section 510 of the Civil Practice Act provides that a judgment for a sum of money becomes a lien against 'the *real property* and *chattels real* * * * which the judgment debtor has at the time of so docketing * * *' (emphasis supplied), and that section 5203 of the Civil Practice Law and Rules, adopting the substance of the foregoing

provisions of section 510, and entitled 'Priorities and liens upon real property', does not state that docketing of the judgment creates a lien upon *chattels real*. *But that is of no significance, since under section 105(p) of the Civil Practice Law and Rules, by express definition, 'chattels real' are included in the meaning of the term 'real property'*. There is thus no change in the prior law, under which a lien upon real property or chattels real is created by docketing (see 5 Weinstein, Korn & Miller, New York Civil Practice, par. 5018.01 [p. 50–237])." Lacaille v. Feldman court, 44 misc. 2d 370, 253 NY2d (1964)."

This clarifies that under N.Y. law, the judgment creditor need not show that he or she has a specific interest in certain funds, such as those that are scheduled to be forfeited in this matter; but rather, the money judgment becomes a lien against all of the debtor's (Cuba) property within the jurisdiction.

It has been held that a judgment lien has priority over any equitable assignment, such an assignment being considered an equitable lien (City of New York v. Bedford Bar & Grill, Inc., 285 App.Div. 1202, 140 N.Y.S.2d 762, affd. 2 N.Y.2d 429, 161 N.Y.S.2d 67, 141 N.Y.S.2d 575). The court stated 285 App.Div. at page 1203, 140 N.Y.S.2d at page 764, that 'the issue of the priority of a judgment lien over an equitable assignment is not an open one in this Court.' Other cases also indicate the limitations put upon the State's common-law right of priority. The State's lien is subject to a specific lien of a private lienor, where the time when the private lienor obtained his lien is prior to the time when the State asserted or enforced its lien.

"On the basis of the holding and reasoning in these cases, I am of the opinion that the State's common law right of priority is in the nature of an equitable or inchoate lien, which can be defeated by a lien arising in favor of a third party and perfected prior to the assertion or enforcement of the priority of the State. I am of the view, further, that by the docketing of her

judgment and the issuance of an execution and by the levy consequent thereon, the petitioner had perfected her lien prior to the State taking action to enforce or assert its lien." Lacaille 44 Misc. 2d at 383.

"I agree with the analysis of the court in State Tax Commission of the State of New York v. Rothenberg, 166 Misc. 690, 696, 2 N. Y. S.2d 926, 931 that the exclusion of 'personal property' from the statute was the result of careless draftsmanship and could not logically have reflected the legislative intent; but I do not go along with the proposition that, in applying the statute, I should ignore the omission. I point out that the error was later corrected in the new Personal Income Tax Law (Tax Law, art. 22 scc. 6920, but to apply for the tax years commencing with 1963." Lacaille, 44 Misc. 2d at 384.

### (4) The Constitutional Avoidance Doctrine Allows for Partial Forfeitures.

Wiederspan requests that her judgment, in the amount of $63,630,534.37 with 4.5% interest since January 12, 2012, be satisfied out of the $1.7 billion dollars attributable to Paribas' unlawful business dealings with Cuba. If partial forfeitures are forbidden, then a criminal's activity may result in the forfeiture of an innocent third party's interest in property. The government's acquisition of an entire tract of real property in forfeiture proceedings may thus constitute an unconstitutional taking of a third party's interest or a deprivation of that party's property without due process, in violation of the Fifth Amendment. See U.S. Const. Amend. V; see also United States v. Totaro, 345 F.3d 989, 999 (8th Cir.2003) ("If this court were to deem forfeited the entire estate despite a valid claim of partial ownership by a third party, ... [i]t would... punish the third party, against whom no jury has returned a verdict of guilt, and may therefore raise constitutional questions of a whole different order.") (citation omitted); United States v. One 1976 Chevrolet Corvette, 477 F.Supp. 32, 35 (E.D.Pa.1979) (holding that operation

of forfeiture statute against bona fide purchaser violates Fifth Amendment). Cf. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 679-80 & 689-90, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). The canons of construction, however, require us to construe statutes in such a way as to avoid raising such constitutional concerns. See INS v. St. Cyr, 533 U.S. 289, 299-300, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

"…Courts have consistently construed the civil forfeiture statute, 21 U.S.C. § 881, to permit partial takings. See, e.g., United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1015 (8th Cir.2003); United States v. 198 Training Field Road, 2004 WL 1305875, at *2-3 (D.Mass. June 14, 2004); United States v. Real Property Located at Incline Village, 976 F.Supp. 1327, 1342-43 (D.Nev.1997). Although we recognize that the criminal and civil forfeiture provisions are not identical, see United States v. $359,500 in United States Currency, 828 F.2d 930, 933 (2d Cir.1987); United States v. $2,500 in United States Currency, 689 F.2d 10, 15-16 (2d Cir.1982), most circuits have recognized Congress' intention to vest in the government the same substantive rights under the two statutes, notwithstanding their technical differences. See United States v. Littlefield, 821 F.2d 1365, 1367 (9th Cir.1987); see also United States v. Smith, 966 F.2d 1045, 1053-54 (6th Cir.1992).

In light of the constitutional-avoidance canon and the parallel construction of the criminal and civil forfeiture statutes, most courts have suggested that the criminal forfeiture statute, 21 U.S.C. § 853, permits partial forfeitures of real property. See Totaro,345 F.3d at 999; United States v. O'Dell, 247 F.3d 655, 680 (6th Cir.2001); United States v. Kennedy, 201 F.3d 1324, 1329 (11th Cir.2000); Lavin, 942 F.2d at 185; United States v. Certain Real Property Located at 2525 Leroy Lane, West Bloomfield, Michigan, 910 F.2d 343, 350-51 (6th Cir.1990). Although

none of those courts explicitly held that the criminal forfeiture statute permits partial forfeitures, we do so now.

No other result seems reasonable. Although partial forfeitures may occasionally make for strange bedfellows — such as making the government co-owners of real property with the spouse of a criminal defendant — the alternative could give the government an undeserved windfall and deny an innocent third party her valid property interest. The purposes of the forfeiture penalty are to punish, deter and disempower criminals, see United States v. Morgan, 224 F.3d 339, 343 (4th Cir.2000); United States v. Rogers, 102 F.3d 641, 648 (1st Cir.1996), aims which are not furthered by taking an innocent owner's share. Indeed, we fail to see either how any legitimate interest could be furthered by reading the statute to forbid partial forfeitures or how Congress could have intended to forbid them." Pacheco v. Serendensky, 393, F. 3d 348 (2d Cir. 2004).

The lien created by this notice attaches to any cause of action of the person named in page one that is the subject of this action or proceeding and to that person's or entity's right to the money or property under any judgment subsequently procured in this action or proceeding. No compromise, dismissal, settlement, or satisfaction of this action or proceeding or any of the rights of the person named in page one to money or property under any judgment procured in this action or proceeding may be entered into by or on behalf of that person, and that person may not enforce any rights to the money or property under any judgment procured in this action or proceeding by a writ or otherwise, unless one of the following requirements is satisfied:

(A)     The prior approval by order of the court in this action or proceeding has been obtained;

(B)     The written consent of Wiederspan has been obtained or that person has released the lien;

(C)     The money judgment of Wiederspan has been satisfied.

**NOTICE the person or entity named in page one may claim an exemption for all or any portion of the money of property within 30 days after receiving notice of the creation of the lien. The exemption is waived if it is not claimed in time.**

<u>/s William Jose Sanchez</u>
**William J. Sanchez Esq.**
**William J. Sanchez P.A.**
*Lead Counsel for Plaintiff Marilyn Wiederspan*
12600 SW 120 Street, Suite 102
Miami Florida 33186
PH: 305.232.8889
FAX: 305.232.8819
William@wsanchezlaw.com

**Mark Bravin, Esq.**
Winston & Strawn LLP
*Co-counsel for Plaintiff Marilyn Wiederspan*
1700 K Street, N.W.
Washington, D.C. 20006-3817
PH: +1 (202) 282-5000
FAX: +1 (202) 282-5100
