UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| - v. - | :   14 Cr. 460 (LGS) |
| BNP PARIBAS, S.A., | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN OPPOSITION TO WIEDERSPAN'S MOTION FOR A
CONFERENCE AND HEARING AND IN SUPPORT OF THE GOVERNMENT'S
<u>MOTION TO DISMISS WIEDERSPAN'S NOTICES OF LIEN</u>**

| | |
|---|---|
| PREET BHARARA<br>United States Attorney | LESLIE CALDWELL<br>Assistant Attorney General<br>Criminal Division |
| Andrew D. Goldstein<br>Martin S. Bell<br>Christine I. Magdo<br>Micah W. J. Smith<br>Assistant United States Attorneys<br>  -Of Counsel- | M. KENDALL DAY<br>Acting Chief, Asset Forfeiture and Money<br>Laundering Section<br><br>Jennifer E. Ambuehl<br>Trial Attorney<br>   -Of Counsel- |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| - v. - | : | 14 Cr. 460 (LGS) |
| BNP PARIBAS, S.A., | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN OPPOSITION TO WIEDERSPAN'S MOTION FOR A CONFERENCE AND HEARING AND IN SUPPORT OF THE GOVERNMENT'S MOTION TO DISMISS WIEDERSPAN'S NOTICES OF LIEN**

The United States of America respectfully submits this Memorandum of Law in opposition to the letter motion of petitioner Marilyn Wiederspan ("Wiederspan"), by and through her counsel, for a conference and hearing pursuant to 21 U.S.C. § 853(n), and in support of the Government's motion to dismiss Wiederspan's notices of lien.  As set forth below, pursuant to Rule 32.2(c)(1) of the Federal Rules of Criminal Procedure, Wiederspan is not entitled to a conference or hearing because the forfeiture in this case consists solely of a money judgment against BNP Paribas S.A. ("BNPP"),[1] and not of any specific property in which Wiederspan may have an interest, and Wiederspan's notices of claim should be dismissed because Wiederspan lacks standing to assert a claim in this action.

---

[1] Wiederspan incorrectly refers to BNP Paribas S.A. as "Paribas."  Paribas was a separate financial institution that merged with BNP in 2000.

1

**PRELIMINARY STATEMENT**

In her effort to intervene in this action, Wiederspan has misconstrued the applicable forfeiture law and misinterpreted the nature of BNPP's forfeiture in this case. Wiederspan's petition and request for a conference and hearing are based on the mistaken assumption that the money being paid by BNPP pursuant to its plea agreement in this case consists of specific property tied to the government of Cuba. The reality, however, is that BNPP's forfeiture consists solely of an *in personam* money judgment, and as a result there is no avenue for third-party intervention. Accordingly, Wiederspan does not have an assertable interest in the money paid to satisfy its forfeiture money judgment, and under Federal Rule of Criminal Procedure 32.2(c)(1), Wiederspan is not entitled to a conference or hearing. *See* Fed. R. Crim. P. 32.2(c)(1) ("no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment"). Indeed, because she does not, and cannot, have an interest in the money to be applied to BNPP's money judgment, Wiederspan lacks standing to submit a petition or notice of claim in this action, and as a result her notices of claim should be dismissed.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.  BNPP's Guilty Plea and Consent To the Entry of a Money Judgment**

On July 9, 2014, pursuant to a written plea agreement entered into with the Government (the "Plea Agreement"), BNPP entered a plea of guilty to a one-count Information charging it with conspiring to violate the International Emergency Economic Powers Act and the Trading with the Enemy Act, in violation of 18 U.S.C. § 371. This Court accepted BNPP's plea. As part of the Plea Agreement, BNPP agreed to the entry of a money judgment equal to the approximate amount of proceeds it knowingly and willfully moved through the U.S. financial system in violation of U.S. sanctions – a total of $8,833,600,000, comprised of approximately $6,400,000,000 in illicit transactions with Sudanese entities, $686,600,000 in illicit transactions

with Iranian entities, and $1,747,000,000 in illicit transactions with Cuban entities. A Consent Preliminary Order of Forfeiture was filed with the Court as part of the Plea Agreement, in which BNPP agreed to the entry of a money judgment against it in the amount of $8,833,600,000. (*See* Docket Entry 13, Ex. 3).

On or about July 28, 2014, pursuant to the Plea Agreement, BNPP transferred $3,838,800,000 to the Government to be held in a Government escrow account until sentencing and then to be applied to the outstanding money judgment (the "Subject Funds").[2] There is no evidence in the record that ties the Subject Funds to the conspiracy or to the government of Cuba and the Government has no reason to believe that such evidence exists.

The Court has not yet entered judgment against BNPP. Sentencing is currently scheduled to take place on May 1, 2015.

### B. Wiederspan's Notices of Lien and Request for an Ancillary Hearing

On or about January 29, 2015, Wiederspan, by and through her counsel, filed a Notice of Lien ("Original Notice") claiming an interest in the funds paid by BNPP to the Government by virtue of her judgment against the government of Cuba.[3] (*See* Docket Entry 29). On or about February 27, 2015, Wiederspan filed an Amended Notice of Lien ("Amended Notice") that

---

[2] Though the Plea Agreement required a total money judgment of $8,833,600,000, the Plea Agreement also specified that the Government would credit against the money judgment payments made by BNPP in connection with its resolution of related New York State criminal charges and its settlement agreements with the Federal Reserve and the New York State Department of Financial Services. The amount of the Subject Funds anticipates the credits provided for those payments.

[3] Wiederspan alleges her lien is created pursuant to 28 U.S.C. § 3201 (Original Notice ¶ 7); however, § 3201 relates to judgment liens against *real* property. *See* 28 U.S.C. § 3201. The Subject Funds are not real property. Wiederspan's Original Notice also indicates that she may "deliver an execution to a sheriff, to formally continue to assert her rights and interest in personal property in question, namely, the monies in the Department of Treasury suspense account." (Original Notice ¶ 11). Principles of sovereign immunity shield the Government from suit, and the Government intends to oppose any efforts by Wiederspan to attach the Subject Funds. Indeed, even if Wiederspan's judgment were to be properly registered in the Southern District of New York, this judgment could not be used to attach the Subject Funds for the reasons set forth herein.

purported to restrain funds held by the Government, and on the same day submitted a letter motion requesting that this Court hold a conference and an ancillary hearing pursuant to 21 U.S.C. § 853(n).  (*See* Docket Entries 32, 33).  In the Amended Notice and through her motion, Wiederspan claims that an ancillary proceeding is required to adjudicate her claimed interest in the Subject Funds.  Wiederspan further requests that the Court impose a constructive trust on the Subject funds in order to use the Subject Funds as a means for executing her judgment against the government of Cuba.

## DISCUSSION

### A. Wiederspan's Request for an Ancillary Hearing Should Be Denied

Federal Rule of Criminal Procedure 32.2 governs criminal forfeiture procedures.  Rule 32.2(c)(1) requires a court to conduct an ancillary proceeding if "a third party files a petition asserting an interest in the property to be forfeited," but "no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment."  Fed. R. Crim. P. 32.2(c)(1).  This language has been in the rule since its adoption in 2000.  The Advisory Committee's Note for Rule 32.2 highlights that "Subdivision (c)(1) makes clear that no ancillary proceeding is required to the extent that the order of forfeiture consists of a money judgment.  A money judgment is an *in personam* judgment against the defendant and not an order directed at specific assets in which any third party could have any interest."  Fed. R. Crim. P. 32.2 advisory committee's note.

There is no ambiguity here: an ancillary proceeding is not appropriate where the forfeiture consists solely of a money judgment.  *See United States* v. *Tolliver*, 730 F.3d 1216, 1233 (10th Cir. 2013) ("[t]here is no provision for third party involvement in the forfeiture determination when the forfeiture involves only a money judgment") (internal citations omitted); *United States* v. *Zorrilla-Echevarria*, 671 F.3d 1, 5-6 (1st Cir. 2011) (noting that money

4

judgments do not allow for third-party involvement, and citing to Fed. R. Crim. P. 32.2(c)(1) and the rule's advisory committee's notes); *United States* v. *Salvagno*, No. 5:02-CR-51, 2006 U.S. Dist. LEXIS 61471, at *35 (N.D.N.Y. July 21, 2006) ("ancillary proceeding is not required when the forfeiture consists of a money judgment").

In *United States* v. *Zorilla-Echevarria*, 671 F.3d 1, 5-6 (1st Cir. 2011), for example, the First Circuit explained that different procedures and statutory provisions apply to the three types of criminal forfeiture: "(1) an *in personam* judgment against the defendant for the amount of money the defendant obtained as proceeds of the offense, (2) forfeiture of specific assets related to criminal activity, and (3) forfeiture of 'substitute assets' if the specific assets are unavailable." (quoting *United States* v. *Candelaria-Silva*, 166 F.3d 19, 42 (1st Cir. 1999)). The First Circuit held that for *in personam* money judgments, "neither Rule 32.2(c) nor 21 U.S.C. § 853(n) apply," and third parties have no interest in funds forfeited pursuant to a money judgment. *Id.* at 10-11 & n.15 ("the distinction between ordering property forfeited and entering a money judgment is deeply embedded in Rule 32.2 and the relevant caselaw").

Here, the only forfeiture at issue consists of a money judgment. As set forth above, pursuant to the Plea Agreement and Consent Preliminary Order of Forfeiture in this case, BNPP has agreed to the entry of a money judgment against it in the amount of $8,836,600,000, an amount equal to the approximate amount of proceeds it knowingly and willfully moved through the U.S. financial system in violation of U.S. sanctions. In expectation of that money judgment, BNPP has transferred the Subject Funds to the Government, and there is no allegation or evidence that the Subject Funds did not properly belong to BNPP. Accordingly, pursuant to Rule 32.2(c)(1), no ancillary proceeding is required, as Wiederspan can have no interest in funds paid pursuant to a money judgment sufficient to warrant intervention in this case. *See* Fed. R.

Crim. P. 32.2(c)(1); *Tolliver*, 730 F.3d at 1233; *Zorilla-Echevarria*, 671 F.3d at 10. For this reason, Wiederspan's request for an ancillary hearing should be denied.

### B. Wiederspan's Notices of Lien Should Be Dismissed Because Wiederspan Lacks Standing To Intervene in this Criminal Action

Wiederspan also lacks standing to intervene in this action and accordingly the Original Notice and Amended Notice should be dismissed.

#### 1. Legal Standard

"In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." *United States* v. *Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999). Standing is a threshold issue. If the claimant lacks standing, the court lacks jurisdiction to consider her challenge of the forfeiture. The burden of proof to establish sufficient standing rests with the claimant. *Mercado* v. *U.S. Customs Serv.*, 873 F.2d 641, 644 (2d Cir. 1989); *United States* v. *One 1986 Volvo 750T*, 765 F. Supp. 90, 91 (S.D.N.Y. 1991). Where the claimant's own allegations are insufficient to demonstrate standing, her claim should be dismissed. *See In re 650 Fifth Ave. & Related Props.*, 08 Civ. 10934 (KBF), 2013 U.S. Dist. LEXIS 124038, at *15 (S.D.N.Y. Aug. 27, 2013) ("Unless claimant can first establish his standing he has no right to put the government to its proof").

To demonstrate standing, a petitioner or claimant "must demonstrate (1) a concrete, particularized, and 'actual or imminent' injury, (2) 'a causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood] . . . that the injury will be redressed by a favorable decision' of the court." *United State* v. *Twenty Miljam-350 IED Jammers,* 669 F.3d 78, 91 (2d Cir. 2011) (quoting *Lujan* v. *Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)).

6

In forfeiture actions, it is well established that general creditors of a debtor lack standing to challenge the forfeiture of the debtor's assets. *United States* v. *Khan,* No. 97-6083, 1997 U.S. App. LEXIS 31870, at *4 (2d Cir. 1997) ("appellants all are essentially unsecured creditors of the owner's seized property, and as such do not have standing to challenge this seizure"); Stefan D. Casella, *Asset Forfeiture Law in the United States* § 10-5(c) (2012) ("The courts universally hold that unsecured creditors lack standing to contest the forfeiture of another person's property."). [4]

### 2.   *Wiederspan Lacks Standing To Assert a Claim in this Action*

As set forth above, in order to establish Article III standing, Wiederspan's notices must demonstrate a legally protectable interest in the Subject Funds.  They do not.  At most Wiederspan has alleged that she has a judgment against Cuba, but that is plainly insufficient to establish standing to assert a claim on the Subject Funds, which were transferred to the Government not from Cuba but from BNPP, and which, moreover, are in no way connected to any funds from or belonging to Cuba.  Indeed, Wiederspan, as an unsecured judgment creditor of Cuba, would not even have standing to intervene if this were a criminal action against the government of Cuba and the Subject Funds belonged to the government of Cuba.  To allow her to intervene without a judgment against BNPP or any interest in the Subject Funds would be unprecedented and contrary to long-established law.

---

[4] *See also, e.g., Cambio Exacto, S.A.*, 166 F.3d at 528-29 (2d Cir. 1999) (person to whom a wrongdoer owes money lacks standing as a general creditor to contest forfeiture of wrongdoer's account); *United States* v. *133 U.S. Postal Service Money Orders,* 496 F. App'x. 723, 724 (9th Cir. 2012); *Keszthelyi* v. *United States*, No. 1:05–cv–303, 2011 WL 1884007, at *18 (E.D. Tenn. May 17, 2011); *United States* v. *$11,900*, No. 09–2303–STA, 2009 WL 3571554, at *4 (W.D. Tenn. Oct. 26, 2009); *United States* v. *Two Bank Accounts,* No. CIV. 06–4016–KES, 2009 WL 803615, at *6 (D.S.D. Mar. 24, 2009).

In an effort to establish standing where there is none, Wiederspan misconstrues the Statement of Facts entered in connection with BNPP's Plea Agreement in order to assert that the Government has conceded that *Cuba* has an interest in the Subject Funds, which, she contends, gives her an interest in the Subject Funds by virtue of her judgment against Cuba. (Amended Notice at 2). But the Government has made no such concession, and in fact there is nothing in the Statement of Facts that suggests in any way that Cuba has an interest in the Subject Funds, or that the Subject Funds are tied in any way to the illicit transactions described in the Statement of Facts (other than approximating the dollar value of the illicit transactions).

Wiederspan claims that "[i]f Paribas approved loans for Cuba to buy oil, or for any other similar purpose, then after approval, the funds belonged to Cuba." (Amended Notice at 2). Even if this were true as a conceptual matter, it is irrelevant to Wiederspan's asserted claim: the transactions involving Cuba that were described in the Statement of Facts (which ended in 2010) involved funds that were entirely distinct from the Subject Funds, which BNPP transferred to the Government pursuant to the Plea Agreement in July 2014.[5]  There is no representation in the Statement of Facts or elsewhere that the funds transferred to the Government are directly forfeitable as proceeds traceable to the crime, or that the funds are being sought as substitute assets pursuant to 21 U.S.C. § 853(p). Thus, Wiederspan is effectively arguing that BNPP's financial transactions with Cuban entities from 2010 and earlier entitles Wiederspan, with a judgment against the government of Cuba, to attach *any* assets of BNPP. This argument is absurd on its face and its application would result in a power exceeding any given to the Government in enforcing its judgments.

---

[5] In fact, if the government of Cuba did have an interest in these funds, BNPP would have been required to obtain a license from OFAC to transfer these funds to the government to avoid an additional violation of TWEA.

Accordingly, Wiederspan has no cognizable interest in the Subject Funds and, therefore, has neither constitutional nor statutory standing to assert a claim in this matter. *See, e.g.*, *United States* v. *Ribadeneira*, 105 F.3d 833, 837 (2d Cir. 1997) (general creditors "cannot claim standing to petition to modify an Order of Forfeiture by virtue of either § 853(n)(6)(A) or (B)").[6]

### C. There Is No Basis for the Court To Impose a Constructive Trust

Recognizing her lack of a legally cognizable interest in the Subject Funds, Wiederspan asks the Court to impose a constructive trust over the Subject Funds that would allow her to attach the Subject Funds in satisfaction of her judgment against the government of Cuba. (Amended Notice at 2-16). This argument fails because Wiederspan does not and cannot trace any of her property to property owned by BNPP. In *United States* v. *Schwimmer*, 968 F.2d 1570, 1583 (2d Cir. 1992), the Second Circuit explained that "[i]t is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer." *See also United States* v. *Peoples Benefit Life Ins. Co.*, 271 F.3d 411, n.4 (2d Cir. 2001) (per curiam) (affirming district court's decision to prohibit intervention in forfeiture action based on a constructive trust theory because the claimant could not trace its assets to the defendant's property "*ex ante*").

---

[6] Notwithstanding the lack of any legal basis for Wiederspan's claim in this case, the Government takes seriously the tragic circumstances that led to Wiederspan's judgment against the government of Cuba, and the frustration that holders of such judgments often encounter in getting those judgments enforced. The recognition of such sympathetic factors does not, however, provide Wiederspan with standing and a basis for intervention where there otherwise is none.

There are also important policy reasons not to impose a constructive trust over the Subject Funds.  Under Wiederspan's proposed theory, the government of Cuba would receive a windfall:  rather than Cuba continuing to be liable for Wiederspan's judgment, BNPP would be required to pay that judgment on Cuba's behalf.   As a result, Cuba would extinguish a major liability without paying a dime, and BNPP could have to pay the amount twice, because under the Plea Agreement, BNPP would owe the Government an equivalent amount to satisfy the full amount of its money judgment.  *See* Docket Entry 13 at 1-2.  Such an absurd outcome is not warranted under New York or federal law.[7]

---

[7] In her Amended Notice, Wiederspan includes a lengthy discussion about how, under the "constitutional-avoidance canon," partial forfeitures of real property should be permitted in order to avoid depriving a third party of its due process rights. (Amended Notice at 17-18).  This discussion has no relevance here: permitting the forfeiture of the full amount of the money judgment against BNPP would not deprive any third party of property without due process.  As set forth above, Wiederspan has no claim to or legal interest in the Subject Funds, and accordingly cannot be deprived of any property by virtue of the forfeiture of the Subject Funds.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court deny Wiederspan's request for a conference and hearing, and that the Court dismiss Wiederspan's Original Notice and Amended Notice.

Dated: New York, New York
March 20, 2015

Respectfully submitted,

| | |
|---|---|
| PREET BHARARA<br>United States Attorney | LESLIE CALDWELL<br>Assistant Attorney General<br>Criminal Division |
| | M. KENDALL DAY<br>Acting Chief, Asset Forfeiture and Money<br>Laundering Section |
| By: _____/s/_____<br>Andrew D. Goldstein<br>Martin S. Bell<br>Christine I. Magdo<br>Micah W. J. Smith<br>Assistant United States Attorneys<br>(212) 637-1559 | By: _____/s/_____<br>Jennifer E. Ambuehl<br>Trial Attorney<br>Asset Forfeiture and Money Laundering<br>Section, Criminal Division<br>(202) 307-3066 |