UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___4/30/15___
```

UNITED STATES OF AMERICA,                       :
                                                :
                                                :
                                                :        14 Cr. 460 (LGS)
                -against-                        :
                                                :        OPINION & ORDER
                                                :
BNP PARIBAS S.A.,                               :
                                  Defendant.    :
                                                :

----------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

      On July 9, 2014, pursuant to a plea agreement (the "Agreement") it negotiated with the Government, Defendant BNP Paribas S.A. ("BNPP") pleaded guilty to a one-count Information, charging it with conspiring to violate the International Emergency Economic Powers Act and the Trading with the Enemy Act in violation of 18 U.S.C. § 371.  The Court accepted the guilty plea and approved the Agreement as fair and reasonable.  Pursuant to the Agreement, BNPP consented to the entry of a monetary judgment of over $8 billion, and has deposited in escrow with the Government approximately $3.83 billion (the "Subject Funds"), which is the judgment amount less penalties due to other state and federal entities.

      By Notice of Lien filed on January 29, 2015, and amended on February 27, 2015 (the "Petition"), Third-Party Petitioner Marilyn Wiederspan ("Petitioner") claims a lien on the Subject Funds and seeks an ancillary hearing pursuant to 21 U.S.C. § 853(n)[1] to resolve her claims over the Subject Funds.  The Government moves to dismiss the Petition and opposes Petitioner's request for a hearing.  For the reasons that follow, the Government's motion to dismiss is granted,

---

[1] The Petition makes repeated reference to 21 U.S.C. § 853(m).  That statute, which outlines the procedures for depositions to "facilitate the identification and location of property declared forfeited" in criminal forfeiture proceedings, has no application here.  In any case, Petitioner's memorandum of law in opposition to the Government's motion refers only to 21 U.S.C. § 853(n), which concerns third-party proceedings in criminal forfeiture actions as here.  Accordingly, the analysis is confined to 21 U.S.C. § 853(n).

and Petitioner's application for an ancillary hearing is denied.

## I.  BACKGROUND

Only the relevant procedural history and the facts alleged in the Petition necessary for the disposition of the present motion are recounted below.  The facts alleged in the Petition are assumed to be true for purposes of the motion.

### A.  The Present Case

Defendant's criminal conduct consisted of the covert processing and transfer of billions of U.S. dollars to and from entities in Sudan, Iran and Cuba, in direct contravention of the U.S. sanctions regime.  The Government and BNPP stipulated to a Statement of Facts (the "Statement of Facts") detailing the conduct to which BNPP was pleading guilty, including unlawful transactions of over $6 billion with Sudanese entities, $687 million with Iranian entities and $1.747 billion with Cuban entities.  The Cuban transactions were conducted principally through BNPP's participation in U.S. dollar-denominated credit facilities intended to provide financing to Cuban entities.

The parties stipulated to, and the Court endorsed, a Consent Preliminary Order of Forfeiture/Money Judgment (the "Preliminary Order") stating that a judgment of $8,833,600,000 (the "Judgment Amount") would be entered and become final at sentencing.   The Judgment Amount represents the amount of proceeds traceable to BNPP's criminal conduct.  The Government agreed to credit against the Judgment Amount not more than $4,994,800,000 in payments that BNPP was required to make in connection with its concurrent settlements of related investigations, including by the New York County District Attorney's Office, the Board of Governors of the Federal Reserve System and the New York State Department of Financial Services.  On July 28, 2014, BNPP transferred to the Government the Subject Funds of

$3,838,800,000 -- i.e., the amount of the judgment payable to the Government and remaining after the offset -- to be held in escrow until sentencing and then applied to the money judgment. Sentencing is scheduled for May 1, 2015.

### B. The Third-Party Petition

On January 12, 2012, Petitioner obtained a Florida state court judgment against the Republic of Cuba for over $63 million for the extrajudicial torture and assassination of her father. She seeks to satisfy that judgment and 4.5% post-judgment interest "out of the $1.7 billion dollars attributable to [BNPP]'s unlawful business dealings with Cuba."

Petitioner has taken various steps to "domesticate the judgment," including by filing complaints in the Southern District of Florida and subsequently in this District.  *See Wiederspan v. The Republic of Cuba*, 15 Civ. 1983 (S.D.N.Y.) (Caproni, J.).  Petitioner seeks to enforce her judgment in the present case.  She bases her claim on Cuba's alleged interest in the forfeited funds.  The Petition advances various legal arguments for Petitioner's interest in the Subject Funds, including the doctrine of constructive trust, New York law and the doctrine of constitutional avoidance.[2]

## II.    LEGAL STANDARD

Ancillary proceedings pursuant to the criminal forfeiture statute, 21 U.S.C. § 853(n), are governed by Federal Rule of Criminal Procedure 32.2(c).  *See, e.g.*, *Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 241 (2d Cir. 2011).  Rule 32.2(c) provides that "[i]n the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason."  Fed. R. Cr. P. 32.2(c)(1)(A).  Based on the advisory committee's notes explaining the rule, "a motion to dismiss a third-party petition in a forfeiture

---

[2] Any references to "Paribas" in the parties' motion papers are construed as references to BNPP.

proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004). Further, as in the case of motions to dismiss in civil cases, "the facts set forth in the petition are assumed to be true" for purposes of the motion. Fed. R. Cr. P. 32.2(c)(1)(A).

"In general, '[i]n order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court.'" *United States v. Technodyne LLC*, 753 F.3d 368, 380 (2d Cir. 2014) (quoting *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999)). "[A] district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction, including a determination that the plaintiff has Article III standing, before deciding a case on the merits." *Alliance for Envtl. Renewal, Inc.*, 436 F.3d 82, 85 (2d Cir. 2006) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). A motion to dismiss for lack of standing is properly analyzed under Federal Rule of Civil Procedure 12(b)(1) rather than Rule 12(b)(6) because it concerns "the authority of a federal court to exercise jurisdiction." *Id.* at 88 n.6. In defending against a motion to dismiss under Rule 12(b)(1), the petitioner bears the burden of proving the court's jurisdiction, in this case by proving standing, by a preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A court "may refer to evidence outside the pleadings" in resolving the motion. *Id.*

## III.   DISCUSSION

The Petition is dismissed because Petitioner lacks standing. Petitioner principally asserts standing based on the Terrorism Risk Insurance Act of 2002 ("TRIA"), which allows attachment of "blocked assets of [a] terrorist party" when "a person has obtained a judgment against [that]

terrorist party on a claim based upon an act of terrorism."  Pub. L. 107-297, 116 Stat. 2322 § 201, at 28 U.S.C. § 1610 note.  Because there are no "blocked assets" (or any assets of any party other than BNPP) at issue here, TRIA does not confer standing.

Petitioner has a judgment against the Republic of Cuba.  Petitioner has no judgment against BNPP.  Petitioner has pointed to no evidence, as is her burden on a Rule 12(b)(1) motion, that the Subject Funds consist of any assets that can be traced to Cuba or that Cuba has any ownership interest in the Subject Funds.  Instead, as the Preliminary Order unambiguously states, the Subject Funds constitute a money judgment against BNPP, "*representing the amount* of proceeds traceable to" BNPP's violations and are not the *proceeds* of the violations themselves. (emphasis added).

Throughout her memorandum of law, Petitioner repeats various iterations of the argument that the Statement of Facts and the Information "clearly reflect Cuba's ownership interest" in "funds" that BNPP illicitly transferred, that "Cuba obviously had ownership interests in the funds in question" and that accordingly "it is assumed that Cuba had an ownership interest in those funds."  However, by the plain terms of the Preliminary Order, the Subject Funds are not comprised of the specific funds BNPP transferred unlawfully from or to Cuba, but only "represent[] the amount" of such illicit transactions.  Petitioner's assumptions and surmise to the contrary fall far short of sustaining her burden of proof, and therefore, Petitioner may not enforce her judgment by attaching the Subject Funds.

For the same reasons, Petitioner also fails to establish constitutional standing.  The requirements for Article III standing are well established.  To satisfy the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized

'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 134 S. Ct. 1377, 1386 (2014) (quoting *Lujan*, 504 U.S. at 560). Because any injury Petitioner suffered or will suffer is not fairly traceable to BNPP's actions or the Subject Funds, Petitioner lacks standing.

Petitioner's remaining arguments are similarly unpersuasive. First, Petitioner relies on inapposite cases involving individuals seeking to enforce their judgments against foreign states from electronic fund transfers ("EFTs") blocked in United States banks pursuant to established sanctions regimes. *See, e.g.*, *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1002 (2d Cir. 2014) (explaining when an EFT blocked midstream is "property of a foreign state" or "the property of an agency or instrumentality of such a state" subject to attachment by judgment holders under 28 U.S.C. § 1610(g)); *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 210 (2d Cir. 2014) (resolving "whether and under what factual circumstances TRIA permits the attachment of mid-stream EFTs" by individuals seeking to enforce a Florida state court judgment against Cuba). In both cases Petitioner cites, the funds at issue were blocked en route from the relevant foreign state and in that way were clearly tied to those states. Here, however, the Subject Funds come from BNPP, not Cuba.

Second, there is no merit to Petitioner's assertions that "only now the Government is claiming that the Subject Funds are separate from the funds that were the subject of the investigation" and that "[t]his fact is not made clear in any of the filed documents." To the contrary, the Preliminary Order, filed on the docket concurrently with the Information and Statement of Facts, explicitly states that the value of the Subject Funds is (approximately) equal

to the amount of BNPP's illegal trades, and that the Subject Funds are not themselves the specific funds that were the subject of the investigation.

Third, Petitioner cannot show standing merely because all her allegations in the Petition must be taken as true on the present motion. As already explained, for the Petition to withstand the present motion, Petitioner must establish her standing by a preponderance of the evidence. Further, even if the present motion were a Rule 12(b)(6) motion for dismissal on the merits, as Petitioner assumes, the Petition would still be dismissed because it fails to plausibly allege that Cuba has any ownership interest in the Subject Funds. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Fourth, Petitioner does not have standing in the present proceedings under the equitable doctrine of constructive trust. "It is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer." *United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985). Petitioner has failed to trace any property interest to the Subject Funds.

Fifth, Petitioner's reliance on *United States v. Egan*, 811 F. Supp. 2d 829 (S.D.N.Y. 2011), is misplaced. In *Egan*, after Egan and another defendant pleaded guilty to charges involving bank fraud, the petitioners commenced ancillary forfeiture proceedings concerning cash that the Government had seized "in the course of [its] investigation of fraud allegations" from vaults located in Egan's company. 811 F. Supp. 2d at 832. Petitioners in that case asserted claims over portions of the specific funds seized from the vaults. In denying the Government's motions to dismiss the third-party petitions, the district court concluded that the "petitions plausibly assert legal interests in portions of the Seized Funds." *Id.* at 840. Here, by contrast, the Subject Funds were never seized by the Government nor are they proceeds of BNPP's crimes.

Rather, BNPP deposited the Subject Funds to satisfy a general money judgment that will be finalized at sentencing.  Accordingly, Petitioner cannot show a legal interest in the Subject Funds.

Sixth, even assuming Petitioner had standing to intervene -- which she does not -- she would have no right to ancillary proceedings, including a hearing.  "If . . . a third party files a petition asserting an interest in the property to be forfeited, . . . no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment," Fed. R. Crim. P. 32.2(c)(1), because "[a] money judgment is an *in personam* judgment against the defendant and not an order directed at specific assets in which any third party could have any interest."  Fed. R. Crim. P. 32.2 Advisory Committee's Notes.  *See also United States v. Tolliver*, 730 F.3d 1216, 1233 (10th Cir. 2013) ("[T]here is no provision for third party involvement in the forfeiture determination" in the case of a money judgment.  (quoting *United States v. Zorrilla-Echevarria*, 671 F.3d 1, 6 (1st Cir. 2011))).  Petitioner does not contest that the Subject Funds constitute a money judgment.  She argues instead that Rule 32.2(c) does not categorically bar ancillary proceedings in the context of money judgments, but merely states that such proceedings are not required.  Therefore, Petitioner argues, the ultimate decision on the appropriateness of ancillary hearings in such cases is left to the discretion of the courts.  To the extent such discretion exists, exercising it would allow Petitioner to intervene in a proceeding in which she can show no cognizable legal interest.  The Court declines such an exercise of discretion.

The Petition is dismissed.  Any application for leave to amend the Petition is denied as futile because any "proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

## IV.   CONCLUSION

Petitioner has every right to enforce her valid judgment against the Republic of Cuba in a proceeding in which she has standing.  For the foregoing reasons, this is not such a proceeding. Accordingly, the Government's motion to dismiss the Petition is GRANTED, and Petitioner's application for a hearing is DENIED.  The Petition is dismissed with prejudice.

The Clerk of Court is directed to close the motions at Dkt. Nos. 33 and 35.  The Clerk is further directed to close the letter motion at Dkt. No. 46 as moot.

SO ORDERED

Dated: April 30, 2015
    New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**