```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                           14 CR 460 (LGS)

BNP PARIBAS S.A.,

              Defendant.

------------------------------x
                                       New York, N.Y.
                                       May 1, 2015
                                       11:00 a.m.


Before:

                HON. LORNA G. SCHOFIELD,

                                       District Judge


                     APPEARANCES


PREET BHARARA,
     United States Attorney for the
     Southern District of New York
ANDREW D. GOLDSTEIN
MARTIN BELL
     Assistant United States Attorney

SULLIVAN & CROMWELL LLP
     Attorneys for Defendant
KAREN PATTON SEYMOUR
MAURA EILEEN MILLER

ALSO PRESENT:

JENNIFER ELIZABETH AMBUEHL, U.S. Department of Justice
```

1        THE DEPUTY CLERK:  The Honorable Lorna G. Schofield
2   presiding in the matter of United States of America versus
3   BNP Paribas S.A.
4        Counsel, please state your names for the record.
5   Everyone else please be seated.
6        MR. GOLDSTEIN:  Good morning, Judge Schofield.  Andrew
7   Goldstein, for the government.  With me at counsel table is my
8   colleague, Jennifer Ambuehl, from the Department of Justice
9   Asset Forfeiture and Money Laundering Section, and Martin Bell,
10  from our office.
11       THE COURT:  Good morning.
12       MS. SEYMOUR:  Good afternoon, your Honor.  It's Karen
13  Seymour, from Sullivan & Cromwell, here with my colleague Maura
14  Miller, also from Sullivan & Cromwell, and we are accompanied
15  by Georges Dirani, the general counsel of BNP Paribas.
16       THE COURT:  Good morning.  You may be seated.
17       MS. SEYMOUR:  Good morning, your Honor.
18       THE COURT:  We are here today to impose sentence in
19  the case of United States verse BNP Paribas S.A.  I will refer
20  to that entity as BNPP or "the defendant."  I want to make a
21  brief statement before I do that because I understand that some
22  of you in court today had wanted to make some kind of
23  application but have not filed an application, and those
24  matters concern your having been injured by and have judgments
25  against the states or some of the states with which BNPP was

illegally carrying out forbidden transactions, namely, Sudan, Iran and Cuba. Your presence in the room emphatically reminds BNPP and other banks contemplating similar conduct of the pain and suffering states they illicitly transacted with can inflict, and your being here also illustrates why the United States imposes sanctions on the states in the first place.

The question, however, is whether you may intervene in this action. And to quote a statement from Chief Justice John Marshall, in the year 1825, "Whatever might be the answer of a moralist to this question, a jurist must search for its legal solution."

So as a jurist, meaning as a judge, I am required to apply the law; and under the law, any such persons may not intervene in this action.

In this proceeding, I will sentence BNPP for its conduct, and a money judgment will be deposited with the government. The money judgment represents the amount of proceeds traceable to BNPP's illegal transactions with Sudan, Iran and Cuba. To be clear, Sudan, Iran and Cuba do not own the money that BNPP will deposit with the government; and, therefore, you may not enforce any judgment against those states from the money judgment in this case, at least not in this proceeding.

I understand that the government retains discretion to distribute those proceeds, from the money judgment here, to

1  terror victims under appropriate circumstances.  Therefore,
2  although you may not intervene in this court, you may have
3  other means to seek relief from the government after
4  sentencing.
5      So let me move on to the sentencing itself.
6      BNPP pleaded guilty to conspiracy to violate the
7  Emergency Economic Powers Act and the Trading With The Enemy
8  Act pursuant to a plea agreement dated June 27, 2014.  I have
9  received and reviewed the government's submission filed
10 April 24, 2014.  Thank you, Ms. Seymour.
11     I have also reviewed the parties' plea agreement, the
12 statement of facts, and the information.
13     Defendant waived the issuance of a presentence
14 investigation report, so there is none.
15     Are there any additional submissions in connection
16 with the sentencing or anything else that I should have
17 reviewed?
18     Mr. Goldstein?
19     MR. GOLDSTEIN:  I think you said it was submitted by
20 Ms. Seymour but it was from the government.
21     THE COURT:  I'm sorry, it was the government's
22 submission.  Thank you, Mr. Goldstein.
23     MR. GOLDSTEIN:  But other than that, I believe you
24 have everything, your Honor.
25     THE COURT:  Okay.

1            Ms. Seymour, is there anything else that I should be

2    looking at, from your point of view?

3            MS. SEYMOUR:  No, your Honor.

4            THE COURT:  Okay.

5            This is a sentence pursuant to a plea agreement, the

6    one I just referenced, in which the parties agreed to a

7    sentence and forfeiture.  On July 9, 2014, the Court accepted,

8    and therefore is bound by, the plea agreement.

9            In the plea agreement, the parties stipulated to a

10   particular calculation of the sentencing guidelines.  I accept

11   their guidelines calculation and find that the offense level is

12   26.  The parties also agreed that under the guidelines and the

13   factors listed under 28, U.S.C., Sections 3553 and 3572, the

14   appropriate fine amount is $140 million, representing twice the

15   amount of pecuniary gain to BNPP as a result of the offense

16   conduct.  And that is a quote from the plea agreement.

17           I should also put on the record what the maximum

18   penalty for the crime is; and that is, $140 million, the same

19   amount, fine, and five years' probation.  There's also

20   mandatory special assessment of $400.

21           In the plea agreement, BNPP also admitted the

22   forfeiture allegation, which means that it agreed to forfeit

23   the amount of proceeds traceable to the criminal offense, which

24   the parties have agreed is $8,833,600,000.

25           Before I impose sentence, does the government wish to

1    be heard with respect to sentencing?
2             MR. GOLDSTEIN:  No, your Honor.
3             THE COURT:  Okay.
4             Does defense counsel wish to be heard?
5             MS. SEYMOUR:  Your Honor, very briefly --
6             THE COURT:  Could you pull the mic close to the edge
7    of the table and speak into it.
8             MS. SEYMOUR:  Sure.
9             Your Honor, very briefly, BNPP has taken the lessons
10   to heart from this case.  And if your Court would allow,
11   Mr. Dirani would like to make a very brief statement, your
12   Honor.
13            THE COURT:  I was going to invite Mr. Dirani next, so,
14   Mr. Dirani, I'd be happy to hear you now.
15            MR. DIRANI:  Thank you, your Honor.
16            I appreciate the opportunity to address the Court on
17   behalf of BNP Paribas.
18            THE COURT:  That's fine.  Take as much as time as you
19   like.
20            MR. DIRANI:  BNP Paribas accepts full responsibility
21   for its conduct.  In the roughly ten months since the guilty
22   plea, the organization has taken many steps, and continues to
23   take steps, to strengthen its compliance and controls.
24            The commitment to compliance has been driven by our
25   CEO, who has personally overseen many of these efforts.

             The transformation of the organization and its culture
has been dramatic.  There is no question that the organization
today would not tolerate the kind of behavior we have seen in
this case, and BNPP is determined to do what it can to ensure
that we do not fall below the high standards of responsible
conduct by which we seek to operate.

             Thank you, your Honor.

             THE COURT:  Okay.  Thank you.

             I will now state the sentence I intend to impose, but
the attorneys will have a final opportunity to make any legal
objections before the sentence is final.

             Mr. Dirani, would you please rise.

             After assessing the particular facts of this case, the
factors under Section 3553 and Section 3572, and the
court-approved plea agreement, it is the judgment of the Court
that BNPP is sentenced to pay a fine in the amount of
$140 million and serve a term of five years' probation.

             I will enter a separate order of forfeiture in the
amount of 8,833,600,000, which represents the full amount that
BNPP unlawfully moved through the U.S. financial system during
the course of the criminal conspiracy.  This amount is subject
to the following credits for amounts paid by BNPP to settle
other actions:  2,243,400,000 to the New York County District
Attorney's Office; 508 million to the Federal Reserve;
2,243,400,000 to the New York State Department of Financial

1  Services; which leaves a net amount owing of 3,838,800,000.
2           I am also imposing a mandatory special assessment of
3  $400, which shall be due immediately.
4           I am also imposing the following conditions of
5  probation.  There are three:  First, that the defendant not
6  commit another state, local or federal crime during the
7  probation term; two, that the defendant enhance its compliance
8  policies and procedures regarding U.S. sanctions laws and
9  regulations in accordance with the settlement agreements it's
10 entered into with the Federal Reserve and the New York
11 Department of Financial Services; and, finally, that the
12 defendant consent to the imposition of a monitor.
13          Does either counsel know of any legal reason why this
14 sentence should not be imposed as stated?
15          MR. GOLDSTEIN:  No, your Honor.
16          MS. SEYMOUR:  No, your Honor.
17          THE COURT:  Okay.  The sentence as stated imposed.
18          Are there any applications in connection with the
19 sentence?
20          MR. GOLDSTEIN:  Your Honor, the government did want to
21 make one statement on the record with regard to the victims who
22 were in the courtroom --
23          THE COURT:  I didn't realize there were victims in the
24 courtroom.  Okay.
25          Please, I'm required, as we all know, to give victims

1    an opportunity to be heard.  You're speaking on their behalf?

2              MR. GOLDSTEIN:  I am not, your Honor.  And by the term

3    "victim," what I mean is I'm referring to the individuals who

4    you addressed at the outset of this proceeding.

5              THE COURT:  Ah, who were not victims?

6              MR. GOLDSTEIN:  Not victims of this crime.

7              THE COURT:  Okay, fine.  You may be heard on that

8    issue.

9              MR. GOLDSTEIN:  Thank you, your Honor.

10             As your Honor recognized, there are numerous

11   individuals of whom the government is aware who suffered

12   grievous harm at the direction of the regimes in Sudan, Iran

13   and Cuba, which are the regimes that this defendant willfully

14   processed billions of transactions for.

15             As your Honor indicated in denying the restitution

16   request of one such potential claimant, Marilyn Wiederspan, in

17   advance of today's proceeding, under the restitution

18   regulations, we recognize -- and it's quite clear, we

19   believe -- that the victims with whom I have just described or

20   whom I have just described are not victims of this crime and

21   cannot show that they were directly harmed by BNPP's conduct.

22             That said, the government is exploring ways to use the

23   forfeited funds in this proceeding to see if there is an

24   equitable way to distribute funds from this judgment to

25   potential victims of these regimes.  There is authority, we

believe, to at least begin to explore this process under Title 21, United States Code, Section 853(i), which gives the Attorney General the authority to grant petitions for mitigation or remission of forfeiture to restore forfeited property to victims of the violation of this subchapter or to take any other action to protect the rights of innocent persons which is in the interests of justice.

The government believes that the law on regulations that govern remission and restoration are not going to be applicable here for the same reasons that restitution is not applicable, and that there's no direct pecuniary harm to the victims of these regimes tied to BNPP's conduct at issue here. However, we think that there may be a mechanism by which, under Title 21, U.S.C., 853, that there could be some form of compensation.

So the government is going to, starting today, set up a process for individuals who are harmed or who were harmed by the regimes in Sudan, Iran or Cuba, to submit information to the Department of Justice so that the department can evaluate whether it would be possible to provide compensation to the victims of these regimes in a fair and equitable way through the forfeiture in this case.

My colleague Jennifer Ambuehl, from the Department of Justice, can very briefly describe for the Court how that process is going to work as of right now, if the Court will

1     allow it.
2            THE COURT: Okay, I will allow it. And the
3     description, of course, is not so much for me, since I have the
4     legal constraints that I referenced and that you referenced --
5     there is no legal remedy that I can provide these unfortunate
6     people here -- but to the extent there is something the
7     government can do, I'm sure they would like to hear about that
8     and particularly like to hear how they will find out about it
9     as we progress and how they can participate.
10           So I'd be delighted to hear from you, Ms. Ambuehl.
11           MS. AMBUEHL: Thank you, your Honor. And I appreciate
12    the opportunity to speak at sentencing. I think it's one of
13    the best ways that we can get information out to this class of
14    individuals very quickly.
15           So, in order to support the collection of information,
16    the government has set up a website which will be live shortly
17    after this sentencing, and it can be found at www.usvbnpp.com.
18    And that will permit, this website will permit, individuals or
19    their representatives to submit information to the government
20    regarding the nature and the value of the harm they used based
21    on these sanctioned regimes, Sudan, Cuba and Iran. This
22    website and the relevant phone numbers associated with this
23    website that will provide relevant information should go live
24    shortly after sentencing.
25           The government intends to use this information

collected to better understand the classes of individuals that could be awarded compensation, to evaluate the information and documentation that would be required of claimants, and to set up an equitable system of evaluating any potential future claims.

Although there are practical and policy considerations that impact whether this money can be fairly and responsibly distributed to victims of these regimes, we are committed to attempting to compensate individuals, and this information will be invaluable to helping the government assess whether that is possible here.

As I mentioned -- and I will just repeat for those in the audience -- the website is www.usvbnpp.com. And on this website we provide in easy-to-read format details about what information the victims should submit at a very basic level. We are asking individuals harmed by these governments to provide us with their contact information. We also ask them to describe the nature and the value of the harm that they suffered. We ask them when and where the harm occurred. We also ask them for general descriptions of documentation available regarding the harm.

The government is primarily seeking information from individuals harmed by these regimes during the course of BNPP's conspiracy. However, if an individual's harm occurred outside of this time frame, we are requesting that they still submit

1    information but also include a short explanation why we should
2    consider their harm, and the form will have a box for them.
3             Similarly, because we are using this information to
4    determine whether a claims process is appropriate and what the
5    requirements of any future claims process should be, we also
6    ask that the individual describe the type of documents that
7    they have to substantiate their injury but do not request that
8    they submit any documentation at this time.
9             We have attempted to make the form accessible and to
10   minimize the burden on the individuals submitting the
11   information.  And submitting their information does not mean
12   that they will ultimately be entitled to any of these monies.
13            We're providing a 90-day period for which individuals
14   can submit this information.
15            Once the information is received, the government will
16   analyze it, along with other information it possesses, to
17   better understand whether there is a class of victims that
18   should be compensated from these funds.  Only at that point
19   would the government start any formal claims process.
20            THE COURT:  Do you have any expectation of when that
21   might be?
22            MS. AMBUEHL:  When what might be?  The --
23            THE COURT:  I understand there's a 90-day period day
24   to collect information and then there's an analysis period, at
25   the end of which you make a decision about what to do.  And the

1  question most people would be interested in is:  When might
2  that decision be made?
3         MS. AMBUEHL:  Your Honor, I think that's highly
4  dependent upon the information we receive through this process.
5  There may be a very clear answer that arises from this data,
6  but it's too soon to tell how we will be able to analyze that
7  and in what time frame.
8         THE COURT:  Okay.
9         MS. AMBUEHL:  However --
10        THE COURT:  As long as I have interrupted you, let me
11 just clarify:  So one of the things that you said is that
12 although you would like to focus on people who suffered their
13 injuries during the conspiracy period, you'd also consider
14 injuries outside the conspiracy period.  And so I understand
15 it, that the period during the conspiracy that's at issue in
16 this case is from around 2004 up to including 2012; is that
17 right?
18        MS. AMBUEHL:  That's correct, your Honor.
19        THE COURT:  All right, sorry I interrupted.  Go ahead.
20        MS. AMBUEHL:  No, that's perfectly all right.  And it
21 helps explain things to those in the audience also.
22        I would like to say that even though we don't know
23 what time frame we would be able to start this claims process
24 in, the contact information we are soliciting will help us to
25 provide those individuals with updates as the process proceeds.

1           THE COURT:  Okay.
2           MS. AMBUEHL:  This request for information is an
3  unprecedented step, but in light of the unprecedented nature of
4  the BNPP's criminal conspiracy and the resulting forfeiture,
5  the government believes it is important to set up a process
6  that will ultimately lead to the compensation of individuals
7  who have suffered harm at the hands of these regimes that
8  benefited from BNPP's conduct in this case.
9           THE COURT:  Okay.  Thank you very much.
10          I have one more statement, and that is to BNPP:  You
11 may have the right to appeal your conviction and sentence
12 subject to the terms of the plea agreement.  Your notice of
13 appeal must be filed within 14 days of the judgment of
14 conviction.
15          Is there anything else that I need to address from
16 either counsel at this time?
17          MR. GOLDSTEIN:  Not from the government, your Honor.
18          MS. SEYMOUR:  No, your Honor.
19          THE COURT:  Thank you very much.
20          (Adjourned)