

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 7, 2016

BY ECF

Honorable Lorna G. Schofield
United States District Judge
United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States* v. *BNP Paribas S.A.*, 14 Cr. 460 (LGS)

Dear Judge Schofield:

    The Government respectfully writes to provide the Court with an update regarding funds that were forfeited by BNP Paribas S.A. ("BNPP") in the above captioned matter. As the Court will recall, in connection with the sentencing of BNPP on May 1, 2015, the Court entered a final Consent Order of Forfeiture/Money Judgment (the "Consent Order") that required BNPP, *inter alia*, to forfeit a total of $8,833,600,000, of which $3,838,800,000 (the "Federally Forfeited Funds") was paid directly to the United States for deposit into the United States Treasury Suspense Account. (As set forth in the Consent Order, the remainder of the forfeiture amount was paid to State and regulatory authorities in connection with BNPP's concurrent resolutions with those authorities.)

    As explained in more detail below, in December 2015, as part of the omnibus Appropriations Act, Congress provided substantial funding for the compensation of victims of state-sponsored terrorism. In order for the funds forfeited by BNPP in this case to go to terrorism victims under that legislation, the Act established a terror victim compensation fund, while also prohibiting the Department of Justice from separately providing compensation to individuals from the funds forfeited in the BNPP case. *See* Pub. L. 114-113, Division O, Title IV, Sections 402, 404, 405. The Act was signed into law by the President on December 18, 2015.

    *Background*

    At BNPP's sentencing, the Court noted the presence in the courtroom of several individuals who asserted that they were victims of terrorist acts or other crimes connected to

Sudan, Iran, and/or Cuba (the countries for which BNPP had illegally processed financial transactions), and who had obtained judgments against those regimes. The Court addressed these individuals, who were considering making an application to intervene in this matter regarding the Federally Forfeited Funds, as follows:

> Your presence in the room emphatically reminds BNPP and other banks contemplating similar conduct of the pain and suffering states they illicitly transacted with can inflict, and your being here also illustrates why the United States imposes sanctions on the states in the first place. The question, however, is whether you may intervene in this action. . . . and under the law, any such persons may not intervene in this action.
>
> In this proceeding, I will sentence BNPP for its conduct, and a money judgment will be deposited with the government. The money judgment represents the amount of proceeds traceable to BNPP's illegal transactions with Sudan, Iran and Cuba. To be clear, Sudan, Iran and Cuba do not own the money that BNPP will deposit with the government; and, therefore, you may not enforce any judgment against those states from the money judgment in this case, at least not in this proceeding.
>
> I understand that the government retains discretion to distribute those proceeds, from the money judgment here, to terror victims under appropriate circumstances. Therefore although you may not intervene in this court, you may have other means to seek relief from the government after sentencing.

(Tr. 3-4).[1]

At the conclusion of the sentencing proceeding, the Government noted that it was exploring ways to use the Federally Forfeited Funds to potentially assist victims who were harmed by Sudan, Iran, and Cuba. Specifically, the Government announced that it had set up a website, usvbnpp.com, that would allow individuals "who were harmed by the regimes in Sudan, Iran or Cuba, to submit information to the Department of Justice so that the department can evaluate whether it would be possible to provide compensation to the victims of these regimes in a fair and equitable way through the forfeiture in this case." (Tr. 10-15).

In accordance with the Government's representations at sentencing, the Department of

---

[1] Prior to sentencing, the Court dismissed notices of lien that a victim of the Cuban regime who had obtained a money judgment against Cuba attempted to place on the Federally Forfeited Funds. *See* Docket No. 51 (dismissing notices of lien for lack of standing). The Court also denied a related request for restitution from the same petitioner. *See* Docket No. 52 (noting that the petitioner could not show that she was "'directly and proximately harmed' by BNPP's criminal conduct").

Justice engaged in a process for identifying potential compensation recipients – which included extensive consultation with the Department of State, victims groups, administrators of other compensation funds, and others.  The Department of Justice also received and considered thousands of submissions through the usvbnpp.com website and through other means.  This process was ongoing at the time that the Consolidated Appropriations Act, 2016, Public Law No: 114-113 (the "Appropriations Act"), discussed below, was enacted into law.

*The New Legislation*

The Appropriations Act, which was passed on December 18, 2015, provides federal funding to compensate certain victims of terrorist acts, but also specifically prohibits the Department of Justice from carrying out a separate compensation program as discussed at the May 1, 2015 sentencing of BNPP.

Specifically, the Appropriations Act contains a Title called the "James Zadroga 9/11 Victim Compensation Fund Reauthorization Act" (the "Zadroga Reauthorization Act"), which, *inter alia*, provides funding for the reauthorization of the "James Zadroga 9/11 Victim Compensation Fund," which assists certain individuals who suffered harms connected to the September 11, 2001 terrorist attacks.  *See* Pub. L. 114-113, Division O, Title IV, Sec. 401 et seq. For certain classes of such victims (referred to in the statute as "claims in Group A"), the Zadroga Reauthorization Act specifies that "The total amount of Federal funds paid for compensation under this title . . . shall not exceed $2,775,000,000."  *Id.* Sec. 402(d).

The Zadroga Reauthorization Act also contains a section called the "Justice for United States Victims of State Sponsored Terrorism Act," pursuant to which Congress established a "United States Victims of State Sponsored Terrorism Fund" (the "Fund") to provide compensation for certain eligible U.S. persons who were victims of state-sponsored terrorism. *Id.* Sec. 404.[2]  The statute further provides that "There is appropriated to the Fund, out of any money in the Treasury not otherwise appropriated, $1,025,000,000 for fiscal year 2017, to remain available until expended."  *Id.* Sec. 404(e)(5).

While providing for the funding outlined above, the Zadroga Reauthorization Act includes language rescinding the Federally Forfeited Funds and prohibiting the Department of Justice from using any of those funds to provide compensation to individuals except as such funds are directed by Congress.  The relevant section provides as follows:

> [N]one of the funds paid to the United States Government by BNP Paribas S.A. as part of, or related to, a plea agreement dated June 27, 2014, entered into between the Department of Justice and BNP Paribas S.A., and subject to a consent order entered by the United States District Court for the Southern District of New

---

[2] According to the statute, eligible claimants would include United States persons who have suffered an injury arising from the actions of a foreign state designated as a state sponsor of terrorism and who have obtained a final judgment against that state, or who were taken and held hostage from the United States embassy in Tehran, Iran, during the period beginning November 4, 1979, and ending January 20, 1981, or are spouses and children of these hostages.

York on May 1, 2015, in United States v. BNPP, No. 14 Cr. 460 (S.D.N.Y.) to settle charges against BNP Paribas S.A. . . . may be used by the United States Government—

(1) in any manner in furtherance of the proposed use of such funds by the Department of Justice to compensate individuals as announced by the Department of Justice on May 1, 2015; or

(2) in any other manner whatsoever, including in furtherance of any program to compensate victims of international or state sponsored terrorism, except as such funds are directed by Congress pursuant to this title and the amendments made by this title.

*Id.* Sec. 405(a). The statute further provides:

(b) Rescission of funds from BNP settlement. —Of the amounts in the Department of the Treasury Forfeiture Fund established under [S]ection 9705 of [T]itle 31, United States Code, $3,800,000,000 from funds paid to the United States Government by BNP Paribas S.A. as part of, or related to, a plea agreement dated June 27, 2014, entered into between the Department of Justice and BNP Paribas S.A., and subject to a consent order entered by the United States District Court for the Southern District of New York on May 1, 2015, in United States v. BNPP, No. 14 Cr. 460 (S.D.N.Y.), shall be deobligated, if necessary, and shall be permanently rescinded.

*Id.* Sec. 405(b). Notably, the amount of funds rescinded from the BNPP forfeiture – $3.8 billion – is the exact amount of funds that the statute dedicates to Class A claimants to the Zadroga Fund ($2,775,000,000) and to initial funding of the United States Victims of State Sponsored Terrorism Fund ($1,025,000,000). *See id.* Sec. 402(d), 404(e)(5), 405(b).

*Conclusion*

While the Government is still reviewing the statute and its implications, by the statute's plain language as set forth above, the Department of Justice is prohibited from using any of the Federally Forfeited Funds as part of a victim compensation program separate from the programs set forth in the Zadroga Reauthorization Act.

Accordingly, the Department of Justice has updated the usvbnpp.com website to provide information about the Zadroga Reauthorization Act.  The website explains that the United States Victims of State Sponsored Terrorism Fund may provide compensation to "eligible United States persons who hold federal court judgments against foreign states designated state sponsors of terrorism, as well as the Americans held hostage in the embassy in Iran from November 1979 to January 1981," while also noting that pursuant to the statute, "the government cannot act on any of the petitions filed or information and proposals submitted regarding the BNPP case."  The Department of Justice will further update the website after a Special Master is appointed to administer the United States Victims of State Sponsored Terrorism Fund and procedures for applications to that Fund have been established.

        Respectfully submitted,

        /s/

ANDREW D. GOLDSTEIN
MARTIN S. BELL
CHRISTINE I. MAGDO
MICAH W. J. SMITH
Assistant United States Attorneys
Tel.:  (212) 637-1559 /2463

JENNIFER E. AMBUEHL
Trial Attorney
Asset Forfeiture and Money Laundering Section, Criminal Division, U.S. Department of Justice
(202) 514-1263

Cc (by ECF):  Karen Patton Seymour, Esq.
Sullivan & Cromwell LLP
Attorneys for BNP Paribas S.A.