E791bnpp

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4          v.

5  BNP PARIBAS,

6          Defendant.              Plea

7  ------------------------------x

8                                  New York, N.Y.
                                   July 9, 2014
9                                  4:52 p.m.

10

   Before:
11
                   HON. LORNA G. SCHOFIELD,
12
                                      District Judge
13

14                        APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    BY:  ANDREW D. GOLDSTEIN, ESQ.
17       MARTIN BELL, ESQ.
         MICAH W.J. SMITH, ESQ.
18       Assistant United States Attorneys

19  U.S. DEPARTMENT OF JUSTICE
         Asset Forfeiture and Money Laundering Section
20  BY:  JENNIFER E. AMBUEHL, ESQ.

21  SULLIVAN & CROMWELL LLP
         Attorneys for Defendant
22  BY:  KAREN PATTON SEYMOUR, ESQ.

23  GEORGES DIRANI, Corporate Representative, BNP Paribas

24

25

E791bnpp

1           (In open court; case called)

2           THE DEPUTY CLERK:  Counsel, please state your

3     appearances for the record.

4           MR. GOLDSTEIN:  Good afternoon, Judge Schofield.

5     Andrew Goldstein for the government, and with me at counsel

6     table is Assistant United States Attorney Martin Bell, Jennifer

7     Ambuehl, who is a trial attorney for the Department of Justice,

8     and Micah Smith from our office.

9           THE COURT:  Good afternoon.

10          MS. SEYMOUR:  And good afternoon, your Honor.  It's

11    Karen Seymour from Sullivan & Cromwell for the defendant BNP

12    Paribas.

13          THE COURT:  Good afternoon.  And with you is?

14          MS. SEYMOUR:  Is Georges Dirani, who's the general

15    counsel from the client, your Honor.

16          THE COURT:  Good afternoon, Mr. Dirani.

17          MR. DIRANI:  Good afternoon.

18          THE COURT:  You may be seated.

19          So I've been advised that BNP Paribas, which I'll

20    refer to as the bank, wishes to waive indictment and plead

21    guilty to Count One of an information.  Is that right,

22    Ms. Seymour?

23          MS. SEYMOUR:  That's right, your Honor.

24          THE COURT:  So Mr. Dirani, are you appearing on behalf

25    of the bank to plead?

E791bnpp

1          MR. DIRANI:  I am.

2          THE COURT:  Do you read and understand English?

3          MR. DIRANI:  Absolutely.

4          THE COURT:  Okay.  I'm going to ask you some questions

5    to ascertain that you are both competent and authorized to

6    enter a plea, so just answer the questions as completely and

7    honestly as you can.

8          Are you now or have you recently been under the care

9    or treatment of a doctor or a psychiatrist?

10          MR. DIRANI:  No, your Honor.

11          THE COURT:  In the past 24 hours have you taken any

12    drugs, medicine, pills, or drunk any alcohol?

13          MR. DIRANI:  No, your Honor.

14          THE COURT:  Is your mind clear today?

15          MR. DIRANI:  Yes.

16          THE COURT:  And do either counsel have any doubt as to

17    Mr. Dirani's competence to act on behalf of the bank today?

18          MS. SEYMOUR:  No, your Honor.

19          MR. GOLDSTEIN:  No, your Honor.

20          THE COURT:  Okay.  So Mr. Dirani, are you authorized

21    by the board of directors of the bank to enter a plea of guilty

22    on behalf of the bank?

23          MR. DIRANI:  Yes, your Honor.

24          THE COURT:  I'd like to mark as Court Exhibit 1 the

25    limited certificate of corporate resolution that had been

E791bnpp

1    appended to the proposed plea agreement which reflects your

2    authority.

3            My next question is:  Is the board of directors

4    authorized to give you authority to enter into a plea of

5    guilty?

6            MR. DIRANI:  Yes, your Honor.

7            THE COURT:  And is that power conferred by both the

8    French Commercial Code and the bank's Articles of Association?

9            MR. DIRANI:  Yes, your Honor.

10           THE COURT:  To that end, I would like to mark as Court

11   Exhibit 2 Articles L225 through 35 of the French Commercial

12   Code; as Court Exhibit 3, Article 12 of the bank's Articles of

13   Association, both in English and in French; as Court Exhibit 4,

14   Article L225-56 of the French Commercial Code.

15           So on the basis of your answers and the documents --

16   and thank you very much, counsel, for getting them to me on

17   short notice -- I'm satisfied that Mr. Dirani is authorized to

18   enter a plea of guilty on behalf of the bank.

19           Is the bank financially able, Mr. Dirani, to pay the

20   substantial fine that could be imposed by the court for the

21   charge involved in the guilty plea as well as the forfeiture?

22           MR. DIRANI:  Yes, it is, your Honor.

23           THE COURT:  So I will mark as Court Exhibit 5 a press

24   release that I have been given by counsel for the defense dated

25   June 30, 2014, from the French regulatory authorities in

E791bnpp

1    English and in French, commenting both on the liquidity and the

2    solvency of the bank and redirecting its ability to pay, so

3    before we proceed with the waiver of indictment and the plea, I

4    will ask you more questions, and it's important that you answer

5    honestly and completely.  The purpose of the questions is to

6    ensure that you understand the rights of the bank, that the

7    bank is waiving indictment and pleading guilty voluntarily, and

8    that the consequences of doing so are clear.  It's also

9    important that you understand every question before you answer

10   it, so if you don't understand, please let me know and either I

11   or Ms. Seymour will explain.

12            Mr. Pecorino, would you administer the oath to

13   Mr. Dirani, please.

14            THE DEPUTY CLERK:  Please raise your right hand.

15            (Mr. Dirani was duly sworn)

16            THE DEPUTY CLERK:  Thank you.

17            THE COURT:  Now, Mr. Dirani, do you understand that

18   you're now under oath and that if you answer my questions

19   falsely, your untrue answers may be later used against you in a

20   separate prosecution for perjury or making false statements?

21            MR. DIRANI:  Yes.

22            THE COURT:  Okay.  So Ms. Seymour, are you or is

23   Sullivan & Cromwell counsel for the bank?

24            MS. SEYMOUR:  Yes, your Honor.

25            THE COURT:  Both or --

1      MS. SEYMOUR:  Both.

2      THE COURT:  Okay.  And Ms. Seymour, has the bank had a

3  full opportunity to discuss the case with you and discuss the

4  consequences of waiving indictment and pleading guilty?

5      MS. SEYMOUR:  Yes, it has.

6      THE COURT:  Mr. Dirani, has the bank discussed with

7  its attorneys the charges against it, including any defenses it

8  might have?

9      MR. DIRANI:  Yes, your Honor.

10      THE COURT:  And are you and the bank satisfied with

11  the bank's attorneys and their representation of the bank?

12      MR. DIRANI:  Yes, your Honor.

13      THE COURT:  Okay.  You may be seated.

14      So now I want to explain the rights that the bank will

15  be giving up if it waives indictment.  And then after I explain

16  the rights, I will ask you a few questions.

17      First, the bank has a constitutional right to be

18  charged by an indictment of a grand jury, but it can waive that

19  right and consent to being charged by information of the

20  government.

21      Second, instead of an indictment, this charge has been

22  brought by the government, by a prosecutor, by the filing of an

23  information.  Unless the bank waives indictment, it may not be

24  charged with a felony unless a grand jury finds that there was

25  probable cause to believe that a crime has been committed and

1   that the bank committed it.  If you do not waive indictment on

2   behalf of the bank, the government may present the case to the

3   grand jury and ask it to indict the bank.  The grand jury

4   consists of at least 16 and not more than 23 people, and at

5   least 12 grand jurors must find that there is probable cause to

6   believe that the bank committed the crime with which it's

7   charged before it may be indicted.  The grand jury may or may

8   not indict the bank.  If the bank waives indictment by the

9   grand jury, the case will proceed against it on the

10  prosecutor's information just as though the bank had been

11  indicted.

12          Mr. Dirani, has the bank and have you discussed

13  waiving the bank's right to indictment by the grand jury with

14  Ms. Seymour?

15          MR. DIRANI:  Yes, your Honor.

16          THE COURT:  And do you and the bank understand the

17  right to indictment by a grand jury?

18          MR. DIRANI:  Yes.

19          THE COURT:  Have any threats or promises been made to

20  induce the bank to waive indictment?

21          MR. DIRANI:  No, your Honor.

22          THE COURT:  Does the bank wish to waive indictment by

23  a grand jury?

24          MR. DIRANI:  Yes, your Honor.

25          THE COURT:  So questions both to the government and to

1  Ms. Seymour:  Is there any reason that the bank should not be

2  permitted to waive indictment?

3  MR. GOLDSTEIN:  No, your Honor.

4  MS. SEYMOUR:  No, your Honor.

5  THE COURT:  And are you satisfied that the waiver is

6  knowing, voluntary, and intelligent?

7  MR. GOLDSTEIN:  We are, your Honor.

8  MS. SEYMOUR:  Yes, your Honor.

9  THE COURT:  So I will mark as Court Exhibit 6 the

10  waiver of indictment, but I would first like to have Mr. Dirani

11  sign it.  So Mr. Pecorino, if you could get the signatures,

12  please.

13  (Pause)

14  THE COURT:  The court finds that the bank and its

15  representative are fully aware of the bank's right to require

16  the government to proceed by way of an indictment.  The court

17  further finds that the waiver of indictment is freely,

18  intelligently, and voluntarily made.  Therefore, the waiver is

19  accepted and so ordered.

20  So, Mr. Dirani, now that the bank has waived

21  indictment, I would like to discuss the guilty plea with you.

22  If the bank pleads guilty, it is giving up certain

23  rights, and I will explain those rights that the bank will be

24  giving up, and make sure that you understand them and that the

25  bank is voluntarily and freely waiving them.

1    So if the bank pleaded not guilty, it would be

2  entitled to a speedy and public trial before a jury.  If there

3  were a trial, the bank would be presumed innocent and the

4  government would have to prove the defendant's guilt by

5  competent evidence beyond a reasonable doubt.  The bank would

6  not have to prove that it was innocent if it went to trial.

7    If there were a jury trial, the bank could not be

8  convicted unless a jury of 12 people all agreed that the bank

9  was guilty beyond a reasonable doubt.  The bank would have the

10  right to be represented by an attorney throughout all

11  proceedings, including trial, if there is one.

12    If there were a trial, the bank would have the right

13  to see and hear all the witnesses against it, and the bank's

14  attorney could cross-examine them.  The bank would have the

15  right to have its attorney object to the government's evidence

16  and offer evidence on the bank's behalf if it desired, and it

17  would have the right to have subpoenas issued or other process

18  used to compel witnesses to testify in its defense.

19    The bank has the right to plead not guilty.

20    Do you understand all the rights as I have just

21  described them?

22    MR. DIRANI:  Yes, your Honor.

23    THE COURT:  Okay.  If you do plead guilty on behalf of

24  the bank and I accept that plea, you will be waiving the bank's

25  right to trial and all of the related rights that I've just

1   described.  If you plead guilty on behalf of the bank, there

2   will be no trial and I will enter a judgment of guilty and

3   sentence the bank on another day.  Do you understand that?

4            MR. DIRANI:  Yes, your Honor.

5            THE COURT:  I also want you to understand the

6   consequences to you personally.  I will ask you questions about

7   the offense, and if you knowingly give untruthful or misleading

8   answers to those questions under oath on the record and in the

9   presence of counsel, the answers may later be used against you

10  in a separate prosecution for perjury or for making false

11  statements.  Do you understand that?

12           MR. DIRANI:  Yes, your Honor.

13           THE COURT:  Understanding the rights of the bank that

14  you will be giving up if you plead guilty on its behalf, and

15  your own potential liability for giving untruthful answers, do

16  you still wish to proceed?

17           MR. DIRANI:  Yes, your Honor.

18           THE COURT:  Okay.  I have an Advice of Rights form

19  that I'd like Mr. Pecorino to bring to you and have you sign,

20  and I will mark it as Court Exhibit 7.

21           (Pause)

22           THE COURT:  So, Mr. Dirani, now I'll review with you

23  the charges and the possible penalties.  Have you received and

24  read the information which contains the charge against the

25  bank?

1          MR. DIRANI:  Yes, your Honor.

2          THE COURT:  Do you understand that the bank is charged

3   with conspiracy to commit an offense against the United States

4   by conspiring to violate the International Emergency Economic

5   Powers Act and the Trading with the Enemy Act, and regulations

6   under each of those statutes?

7          MR. DIRANI:  Yes, your Honor.

8          THE COURT:  So let me ask the government:  The

9   elements of the offense charged in Count One have been provided

10  to me in a writing.  Have they also been provided to the bank?

11         MR. GOLDSTEIN:  They have, your Honor.

12         THE COURT:  Okay.  Mr. Dirani, have you seen the

13  written list of elements?

14         MR. DIRANI:  Yes, your Honor.

15         THE COURT:  Okay.  I will have that marked as Court

16  Exhibit 8.

17         Mr. Dirani, do you understand that if you, on behalf

18  of the bank, did not plead guilty to Count One of the

19  information, the government would have to prove each and every

20  element of that charge beyond a reasonable doubt at trial?

21         MR. DIRANI:  Yes, your Honor.

22         THE COURT:  Do you understand that the maximum

23  possible penalty for this crime is a maximum fine of the

24  greatest of 500,000, twice the gross pecuniary gain derived

25  from the offense, or twice the gross pecuniary loss to persons

1    other than the bank resulting from the offense; also a maximum

2    term of five years' probation; and a mandatory special

3    assessment of $400?

4          MR. DIRANI:  Yes, your Honor.

5          THE COURT:  If you plead guilty on behalf of the bank

6    to the forfeiture allegation that is in the information, do you

7    understand that I may also order the bank to forfeit the amount

8    traceable to the bank's violation in Count One, which I

9    understand is over $8 billion US?

10         MR. DIRANI:  Yes, your Honor.

11         THE COURT:  I have reviewed the materials that the

12   bank and the government have submitted to me in connection with

13   the plea, including the plea agreement, including a stipulated

14   fine amount and a stipulated forfeiture amount, the

15   information, the written elements of the offense, the statement

16   of facts, agreements with other regulatory and law enforcement

17   authorities, a proposed preliminary order of forfeiture,

18   memoranda that the bank and government submitted on Monday at

19   my request.  And I want to thank counsel.  I'm very sorry it

20   happened over a holiday weekend.  Your submissions were very

21   helpful, so thank you.  And I've also reviewed the additional

22   documents provided by the bank on July 8th evidencing the

23   authority of the bank's board for the guilty plea.

24         In addition to these materials, in imposing sentence,

25   I'm also required to consider the recommendations of the

1  Sentencing Guidelines, which are a set of rules and

2  recommendations for determining an appropriate sentence.  But

3  in the end, I'm required to impose a sentence that I believe

4  best satisfies the purposes of the criminal law based on

5  certain factors set forth in the law in 18 United States Code

6  Section 3553(a).  The plea agreement, including the guidelines

7  stipulation agreement and the appropriate sentence, are not

8  binding on me unless and until I accept the plea agreement.  I

9  may accept, reject, or defer that decision.  If I accept the

10 plea agreement, I will sentence the bank according to its terms

11 on another day.  If I accept that agreement, the bank will not

12 be able to withdraw its plea.  If I reject the plea agreement,

13 the bank will be permitted to withdraw its plea, but my

14 rejection is the only condition under which the bank would be

15 able to do that.  Do you understand that?

16          MR. DIRANI:  Yes, your Honor.

17          THE COURT:  Okay.  So I have a copy of the plea

18 agreement.  I believe Mr. Pecorino also has the original plea

19 agreement dated June 27, 2014, between the bank and the

20 government.  I will have it marked as Court Exhibit 9.

21          Mr. Dirani, did you sign the plea agreement on behalf

22 of the bank?

23          MR. DIRANI:  Yes, your Honor.

24          THE COURT:  And is that pursuant to your delegation of

25 authority from the board as reflected in the resolution which

E791bnpp

1    is Court Exhibit 1?

2              MR. DIRANI:  Yes, your Honor.

3              THE COURT:  Ms. Seymour, have you reviewed the

4    agreement with the bank?

5              MS. SEYMOUR:  Yes, your Honor.

6              THE COURT:  And is the plea agreement, Mr. Dirani, the

7    entire agreement between the bank and the US government?

8              MR. DIRANI:  Yes, your Honor.

9              THE COURT:  Did anyone threaten, coerce, or force the

10   bank to enter into the plea agreement?

11             MR. DIRANI:  No, your Honor.

12             THE COURT:  Other than what is contained in the plea

13   agreement and the agreements with other regulators and law

14   enforcement authorities, has anyone promised or offered the

15   bank any inducement for the bank to enter into the plea

16   agreement and plead guilty?

17             MR. DIRANI:  No, your Honor.

18             THE COURT:  Has anyone promised that the court will

19   approve the plea agreement?

20             MR. DIRANI:  No, your Honor.

21             THE COURT:  So in the agreement the bank and the

22   government have stipulated to the appropriate calculation of

23   the sentencing range under the guidelines, and the bank and the

24   government have also stipulated to a fixed amount for fine and

25   a forfeiture.  Is that right, Mr. Dirani?

E791bnpp

1        MR. DIRANI:  Yes, your Honor.

2        THE COURT:  So as I read it, the stipulated fine

3   amount is 140 million US dollars, representing twice the amount

4   of pecuniary gain to the bank as a result of the offense.  The

5   stipulated probation term is five years.  And there is also a

6   stipulated forfeiture amount of $8,833,600,000, representing

7   the amount of proceeds traceable to the offense.  Is that

8   right, Mr. Dirani?

9        MR. DIRANI:  Yes, your Honor.

10        THE COURT:  Do you understand that these stipulations

11   in the plea agreement are binding on the bank and the

12   government but are not binding on me?

13        MR. DIRANI:  Yes, your Honor.

14        THE COURT:  Do you also understand that under certain

15   circumstances both the bank and the government have the right

16   to appeal any sentence I might impose subject to the terms of

17   the plea agreement but that under that agreement, you're giving

18   up the bank's right to appeal or otherwise challenge the bank's

19   sentence so long as I sentence the bank in accordance with the

20   agreement?

21        MR. DIRANI:  Yes, your Honor.

22        THE COURT:  The plea agreement states that the bank

23   will immediately file an application for prohibited transaction

24   exemption with the US Department of Labor, requesting that the

25   bank be allowed to continue to be a qualified professional

E791bnpp

1     asset manager pursuant to Prohibited Transaction Exemption

2     8414.  And this is a question either for Mr. Dirani or

3     Ms. Seymour:  What is the qualification that the bank is

4     seeking to continue?

5              MS. SEYMOUR:  Your Honor, this is what's called a

6     QPAM --

7              THE COURT:  If you could just pull the mic up to the

8     edge of the table, point it straight up, and then you can stand

9     up straight and I can hear you and everyone else will as well.

10             MS. SEYMOUR:  Sure.  Thank you, your Honor.

11             It's called a QPAM exemption -- a Qualified

12    Professional Asset Manager exemption -- and that will allow the

13    bank and its affiliates to continue to act as an asset manager

14    for funds, such as pension funds and things like that.

15    Otherwise, if that exemption is not granted by the Department

16    of Labor, at the time of conviction at sentencing, then those

17    funds would not be able to continue to maintain their business

18    with the bank.

19             THE COURT:  Okay.  Thank you.  I understand.

20             So the plea agreement further provides that the

21    government agrees to support any motion by the bank that

22    sentencing be adjourned until the Department of Labor has

23    issued a ruling on the request.  And could you explain why that

24    is.  I think you may have just answered it by explaining the

25    relationship between the conviction and the implications

E791bnpp

1    without the exception, but --

2              MS. SEYMOUR:  Yes, your Honor.  So it would not be

3    possible for the bank to continue to maintain this business if

4    we proceeded to sentencing forthwith without having this

5    exemption granted.  The Department of Labor typically takes,

6    we're told, between four to six months to have an exemption

7    granted.  We had sought expedited relief so that it could be

8    done more quickly, but we do not yet have an indication from

9    the Department of Labor of how long that will take.  So this

10   was something that the parties negotiated as part of the plea

11   agreement.

12             THE COURT:  Okay.  Thank you.

13             The plea agreement also states that if the Department

14   of Labor acts adversely to the bank, the bank cannot withdraw

15   its plea or be released from any of its obligations under the

16   agreement.  Do you understand that and agree to that on behalf

17   of the bank, Mr. Dirani?

18             MR. DIRANI:  Yes, your Honor.

19             THE COURT:  Okay.  So would the government please

20   summarize what it would expect to prove if the case went to

21   trial.  And please include how it would prove criminal intent

22   in this case by a corporate entity.

23             MR. GOLDSTEIN:  Yes, your Honor.

24             THE COURT:  And let me ask you to pull the mic all the

25   way up to the edge of the table and point it straight up.  The

E791bnpp

1   acoustics are not great.  Thank you.

2              MR. GOLDSTEIN:  Thank you, your Honor.

3              And I can also just say, with regard to the Department

4   of Labor issue, that we've confirmed with the Department of

5   Labor that the bank did on June 30th submit an application

6   for that exemption, in accordance with the plea agreement.

7              THE COURT:  Okay.  Thank you.

8              MR. GOLDSTEIN:  If the case were to proceed to trial,

9   the government would establish beyond a reasonable doubt each

10  element of the offense charged in the information.  It would

11  also be able to prove, above and beyond that, the facts that

12  are set forth in the statement of facts that were attached to

13  the plea agreement.

14             The government's evidence would include, among other

15  things, internal bank e-mails and communications, wire transfer

16  records, other financial transaction records, and testimony

17  from multiple witnesses both in the United States and overseas.

18  In summary, the evidence would establish that BNPP, or BNP

19  Paribas, engaged in a long-running conspiracy to violate the US

20  embargoes against Sudan, Iran, and Cuba, and that BNP Paribas

21  played the pivotal role in that conspiracy.  It was BNP

22  Paribas's access to the US dollar markets and BNP Paribas's

23  willingness to employ elaborate and sophisticated techniques to

24  evade US sanctions on behalf of its clients that enabled the

25  conspiracy to succeed.

1          The evidence would also show -- and this is in regard

2     to your question about intent -- that senior officials at the

3     bank knew about the illicit transactions and allowed them to

4     continue.

5          As set forth in the statement of facts, there are two

6     objects to the charged conspiracy.  The first object pertains

7     to the violation of the IEEPA, the International Emergency

8     Economic Powers Act, and that pertains to the sanctions against

9     Sudan and Iran.  And with regard to those transactions, and

10    with regard to the willfulness of actors at the bank, the

11    government would point the court in the statement of facts to

12    paragraphs 32, 33, 37 through 39 for Sudan, and 46 and 48 for

13    Iran.

14         And with regard to the second object of the

15    conspiracy, which pertains to the objective of violating the

16    Trading with the Enemy Act, which pertains to the sanctions

17    against Cuba, the government would call the court's attention

18    to paragraphs 56, 57, 58, 61, and 63 through 69 of the

19    statement of facts.  And what those paragraphs show, your

20    Honor, is that for all aspects of this conspiracy, there were

21    individuals at BNP Paribas who were senior compliance, legal

22    and business managers at the bank who knowingly and wilfully

23    engaged in the transactions at issue, and the government's

24    evidence in support of that would consist of e-mails evidencing

25    the knowledge and the willfulness of the participants of the

1  conspiracy at the bank, the transactions themselves, legal

2  opinions that the bank received that laid out for the bank the

3  illegality of these transactions, and then discussions at the

4  bank as reflected in both e-mails and memos from credit

5  committees at the bank that came after those legal opinions

6  were received, where the bank willingly chose to continue to

7  engage in these transactions, in these unlawful transactions.

8      With regard to just the basic elements of the

9  offenses, the transactions at issue that are set forth in the

10 statement of facts, they all would have required a license to

11 have been issued by the Department of Treasury's Office of

12 Foreign Assets Control in order for them to be lawful, and none

13 of the transactions that are laid out in the statement of facts

14 did in fact receive a license.  And that goes for all three

15 areas of transactions for Sudan, Iran, and for Cuba.

16     The government's evidence in total would show, based

17 on the transaction records and witness testimony, that on the

18 whole, BNPP, BNP Paribas, knowingly and wilfully processed

19 illicit US dollar transactions with the following dollar

20 amounts: for Sudan, $6.4 billion; for Iran, $686.6 million; and

21 for Cuba, $1.747 billion.

22     And then lastly, your Honor, with regard to venue, the

23 transactions at issue were processed largely, if not entirely,

24 through either BNP Paribas's New York branch or through

25 unaffiliated banks located in New York, New York, as the

E791bnpp

1   transactions were cleared through the United States.

2           If your Honor has any other questions, I'd be happy to

3   answer them.

4           THE COURT:  Okay.  Thank you.  That's a very useful

5   summary, and I of course have the statement of facts for a more

6   complete statement.

7           So Mr. Dirani, you heard what Mr. Goldstein said.

8   There were a lot of statements, plus we have what's in the

9   statement of facts.  Are those statements accurate?

10          MR. DIRANI:  Yes, your Honor.

11          THE COURT:  So if you could stand now, I'd like you to

12  tell me what the bank did that makes you believe that it is

13  guilty of the crime to which it is pleading guilty.

14          MR. DIRANI:  Yes, your Honor.

15          On behalf of BNP Paribas, I affirm that BNP Paribas is

16  guilty of conspiring to commit an offense against the United

17  States, in violation of Title 18 United States Code

18  Section 371.  From at least 2004 through 2012, BNP Paribas

19  conspired to violate the International Emergency Economic

20  Powers Act and the Trading with the Enemy Act.

21          BNP Paribas admits to all of the facts contained in

22  the statement of facts that is attached as Exhibit B to the

23  plea agreement, and BNP Paribas further admits to all of the

24  allegations in the information.  The facts and allegations set

25  forth in the statement of facts and information are fully

1    incorporated into this statement I am making here.

2             BNP Paribas further admits that:

3             From 2004 up through and including 2012, it entered

4    into an unlawful agreement with banks and other entities

5    located in or controlled by Sudan and Iran to violate US

6    executive orders prohibiting the exportation, directly and

7    indirectly, of services from the United States to Sudan and

8    Iran.  BNP Paribas knowingly and wilfully exported services

9    from the United States to persons and entities located in and

10   controlled by the government of Sudan and to persons and

11   entities located in Iran, by, among other things, structuring,

12   conducting, and concealing US dollar transactions using the US

13   financial system on behalf of banks and other entities located

14   in or controlled by Sudan and Iran.

15            The transactions engaged in by BNP Paribas as part of

16   this conspiracy required a license from OFAC.

17            BNP Paribas engaged in these transactions without

18   first obtaining a license from OFAC.

19            BNP Paribas knowingly and wilfully joined the

20   conspiracy, and its actions to violate the Sudanese Sanction

21   Regulations and the Iranian Transactions and Sanctions

22   Regulations were done wilfully, with the intent to violate the

23   law.

24            In furtherance of this conspiracy and to effect its

25   illegal objects, BNP Paribas, in or about December 2006,

through its subsidiary based in Geneva, Switzerland, caused an unaffiliated US financial institution located in New York to process approximately $10 million transaction involving an entity in Sudan subject to US economic sanctions. BNP Paribas caused this transaction by concealing from the unaffiliated financial institution the involvement of the sanctioned entity.

Also, in furtherance of the conspiracy and to effect its illegal object, in or about November 2012, BNP Paribas processed an approximately $6.5 million US dollars transaction on behalf of a corporation controlled by an Iranian entity through BNP Paribas' branch in New York.

From 2004 up through and including 2010, BNP Paribas entered into an unlawful agreement with banks and other entities located in or controlled by Cuba or Cuban nationals by, among other things, structuring, conducting, and concealing US dollars transactions using the US financial system on behalf of banks and other entities controlled by Cuba.

The transaction engaged in by BNP Paribas as part of this conspiracy required a license from OFAC.

BNP Paribas engaged in these transactions without first obtaining license from OFAC.

BNP Paribas knowingly and wilfully joined the conspiracy, and its actions to violate the Cuban Assets Control Regulations were done wilfully, with the intent to violate the law.

1          In furtherance of the conspiracy and to effect its

2     illegal object, on or about November 24, 2009, BNP Paribas

3     processed an approximately $213,027 US dollars transaction

4     through BNP Paribas's branch in New York in connection with a

5     US dollar denominated credit facility that provided financing

6     to various entities in Cuba that were subject to US economic

7     sanctions.

8          The above actions and conduct were committed by

9     numerous BNP Paribas employees who, in committing the offense,

10     intended to benefit BNP Paribas and were acting within the

11     scope of their employment.

12          THE COURT:  Okay.  Thank you.

13          Mr. Dirani, were these knowing violations of the law?

14          MR. DIRANI:  Yes, your Honor.

15          THE COURT:  Did anyone threaten or coerce or force BNP

16     Paribas or its employees and representatives to do these

17     things?

18          MR. DIRANI:  No, your Honor.

19          THE COURT:  Mr. Goldstein, do you believe that there

20     is a sufficient factual predicate for a guilty plea?

21          MR. GOLDSTEIN:  I do, your Honor.

22          THE COURT:  And Ms. Seymour, do you agree?

23          MS. SEYMOUR:  Yes, your Honor.

24          THE COURT:  Are there any additional questions either

25     of you would like me to ask?

1          MR. GOLDSTEIN:  Not from the government, your Honor.

2          MS. SEYMOUR:  No, your Honor.

3          THE COURT:  Okay.  Ms. Seymour, do you know of any

4     valid defense that would prevail at trial or any reason why

5     your client, the bank, should not be permitted to plead guilty?

6          MS. SEYMOUR:  No, your Honor.

7          THE COURT:  Okay.  Mr. Dirani, I will take the bank's

8     plea now.  How do you, on behalf of the bank, plead to the

9     charge in Count One of the information, guilty or not guilty?

10          MR. DIRANI:  Guilty, your Honor.

11          THE COURT:  Is the bank in fact guilty of that charge?

12          MR. DIRANI:  Yes, your Honor.

13          THE COURT:  Is the plea that you are giving now

14     voluntary and freely given?

15          MR. DIRANI:  Yes, your Honor.

16          THE COURT:  Do you, on behalf of the bank, admit the

17     forfeiture allegation that is contained in the information that

18     the bank will forfeit proceeds traceable to the offense in the

19     amount of 8,833,600,000 US dollars?

20          MR. DIRANI:  Yes, your Honor.

21          THE COURT:  Okay.  Thank you.  You may be seated.

22          On the basis of your responses to my questions and my

23     observations of these proceedings, I am satisfied that the

24     defendant, BNP Paribas, S.A., is waiving its rights knowingly

25     and voluntarily, with an understanding of the consequences of

1  this guilty plea, including the potential sentence that may be

2  imposed. that the defendant is voluntarily pleading guilty,

3  that the defendant by its representative, Mr. Dirani, has

4  admitted that it is guilty as charged in Count One of the

5  information, and that the plea is knowing and voluntary and is

6  supported by an independent factual basis as to each and every

7  element of the crime charged.  I also find that the bank has

8  agreed to forfeit assets knowingly and voluntarily and,

9  accordingly, I accept the defendant's guilty plea and adjudge

10  the defendant guilty of the charge in Count One of the

11  information.

12          Now, Mr. Dirani, I understand from the plea agreement

13  that you wish to waive the bank's right to the preparation of a

14  presentence report.  The report is usually prepared by the

15  probation department after interviewing the defendant and its

16  representatives and obtaining a summary of the case from the

17  government and statements of relevant information from third

18  parties.  Typically I don't have all the information that I do

19  here and so I usually rely very heavily on the presentence

20  report at the sentencing, but in a case like this, I would rely

21  on it in deciding on the plea agreement.  Knowing all that, do

22  you still wish to waive the bank's right to the preparation of

23  a presentence report?

24          MR. DIRANI:  Yes, your Honor.

25          THE COURT:  I accept your waiver in light of the

E791bnpp

1   substantial information that you and your counsel and the

2   government have already submitted to me.

3          Now in considering the plea agreement, I have a number

4   of questions, so let me ask them.

5          My first question is -- and I'll let either the

6   government or Ms. Seymour answer, as is appropriate -- the

7   total forfeiture amount is about $8.8 billion -- 6.4 billion

8   with respect to Sudanese entities, and about 700 million with

9   respect to Iranian entities, and 1.7 billion with respect to

10  Cuban entities, and these are all stipulated numbers in the

11  statement of facts.  My question is:  Where do the numbers come

12  from and how am I to rely on these numbers?  How do we know

13  that they shouldn't be larger numbers or smaller numbers?

14         MR. GOLDSTEIN:  I can address that in the first

15  instance, your Honor.

16         THE COURT:  Okay.

17         MR. GOLDSTEIN:  During the course of the government's

18  investigation and the bank's own internal investigation, the

19  bank retained or the bank's counsel retained consulting firms

20  to do a comprehensive transaction analysis where they reviewed

21  thousands upon thousands of transactions engaged in by the bank

22  during the course of the review period and provided to the

23  government the results of that analysis.  And the government

24  also interviewed the individuals who ran the analysis on behalf

25  of the consulting firms.  And through looking at that analysis

E791bnpp

1    and then through the government's own judgment, in view of the

2    facts, in terms of when the bank's conduct became willful, we

3    were able to approximate the dollar values that your Honor just

4    recounted, which is that, as laid out in the statement of

5    facts, for the Sudanese transactions, the government believes

6    that, based on the factual record, that the bank's conduct

7    became willful in or about July of 2006, and based on the

8    transaction analysis performed under the auspices of outside

9    counsel for the bank and by the consultants, we believe that

10    the dollar value until those transactions ended amounted to

11    approximately $6.4 billion.  And similarly for the Iranian

12    transactions and the Cuban transactions, the dollar value that

13    your Honor has recounted is based on the time period of those

14    transactions where the government believes and the defendant

15    has admitted that the conduct was willful.  There were

16    additional transactions --

17              THE COURT:  Can I interrupt.  How did you know you had

18    all the relevant transactions?

19              MR. GOLDSTEIN:  Obviously the government was relying

20    on the cooperation of the bank, but in doing its due diligence,

21    we had extensive interviews with the individuals who performed

22    the analysis, and we have confidence that the numbers are

23    accurate.

24              THE COURT:  Okay.  So it was based in part on

25    cooperation from the bank, and the bank cooperated from an

E791bnpp

1    early date in providing information?

2            MR. GOLDSTEIN:  That's correct, your Honor.

3            THE COURT:  Okay.  Thank you.

4            Ms. Seymour, is there anything that you'd like to add?

5            MS. SEYMOUR:  No, your Honor.

6            THE COURT:  Okay.  So the total forfeiture amount, as

7    we've been discussing it, is about 8.8 billion, and under the

8    plea agreement that is payable to four entities.  About half,

9    as I read it, was payable to two state entities and half to two

10   federal entities, one being the Federal Reserve and the other

11   being the amount of the forfeiture in this action.  So perhaps

12   this is just a technical question, but in the information, the

13   forfeiture allegation says that the defendant will forfeit the

14   amount "to the United States," and I'm curious why the Federal

15   Reserve is a separate entity from the United States.

16           MR. GOLDSTEIN:  We don't believe the Federal Reserve

17   is a separate entity from the United States, your Honor.  The

18   way that the preliminary order of forfeiture and the plea

19   agreement is written is that the bank is agreeing to a money

20   judgment in the amount of the total forfeiture amount but the

21   government, in the course of negotiating this plea and in the

22   interests of achieving a global resolution with all of the

23   investigating entities and the regulators, has agreed to credit

24   the payments that are made to the Federal Reserve and to the

25   New York State Department of Financial Services, in connection

E791bnpp

1    with the state court plea, and that's how we end up having the

2    one larger number with the credited amounts falling underneath

3    that.

4           THE COURT:  And why is there a separate amount to the

5    Federal Reserve?  Maybe that's a different way of putting my

6    question.

7           MR. GOLDSTEIN:  Under the cease and desist order with

8    the Federal Reserve, as we read it, that amount is required as

9    a separate penalty that needs to be paid.  It's paid to the

10   United States but it's paid separately in connection with that

11   cease and desist order.

12          THE COURT:  Okay.  And so the amount that's actually

13   payable to the United States in connection with the forfeiture

14   related to this plea agreement is how much?

15          MR. GOLDSTEIN:  So --

16          THE COURT:  Ballpark.

17          MR. GOLDSTEIN:  It's the $8.8 billion minus the

18   approximately $4½ billion that will go to the state, minus the

19   $508 million that is geared for the Federal Reserve payment,

20   which leaves, ballpark, about $3.8 billion remaining payments

21   that would be directly paid under this money judgment to the

22   United States.

23          THE COURT:  And where will the $3.8 billion payable to

24   the United States go?

25          MR. GOLDSTEIN:  In the first instance, as set forth in

E791bnpp

1   the preliminary order of forfeiture, it will go into a Treasury

2   suspense account that is an account that will be maintained

3   pending the final resolution of this matter.  Then it's my

4   understanding that it will then go into the Treasury's

5   forfeiture account, which will then be used in accordance with

6   the rules and regulations that govern that account.

7            THE COURT:  And I don't expect you to recite the rules

8   and regulations, but what happens to the money in that account?

9   Sorry to put you on the spot.

10           MR. GOLDSTEIN:  There's a process by which victims of

11  crimes can make petitions for remission, to be able to be

12  compensated.  My understanding is that if the money is not

13  needed to compensate victims, at some point the money ends up

14  essentially being used as general US Treasury funds or can be

15  used by the Congress and the government as general funds.

16           THE COURT:  Okay.  Thank you.

17           The statement of facts says that delays by the bank in

18  providing the government with information until May 2013

19  "significantly impacted the government's ability to bring

20  charges against responsible individuals, Sudanese sanctioned

21  entities, and the satellite banks."  So it appears that many

22  other entities and persons were involved in the transactions.

23  Considering all of these actors together, what is the bank's

24  relative culpability in this conspiracy?

25           MR. GOLDSTEIN:  We believe the bank is principally

1    culpable, your Honor, and as I alluded to earlier in discussing

2    the proffer of proof, it was BNP Paribas that was at the center

3    of this conspiracy, and that enabled the sanctioned entities

4    access to the US dollar system that those entities would not

5    otherwise have had.  The government of Sudan and entities tied

6    to the government of Sudan are co-conspirators, but without BNP

7    acting effectively as its US central banker, it would not have

8    had access to the US dollar markets and to be able to do

9    transactions in US dollars, and so the other entities, the

10   satellite banks that are referenced, were essentially used by

11   BNP Paribas to create a structure that enabled the transactions

12   to go undetected, but their role is significantly less than BNP

13   Paribas, which is the one that was actually structuring the

14   transactions in the first place.

15        THE COURT:  So there are obviously entities whose

16   intent and whose actions are being ascribed to the bank.  Is

17   the investigation still ongoing with respect to other persons

18   and entities or is this the only prosecution that you expect?

19        MR. GOLDSTEIN:  The investigation is ongoing, your

20   Honor.

21        THE COURT:  Okay.  The fine of 140 million is

22   represented to be two times the profits of the bank from the

23   illegal activity.  How do you know what percentage of the

24   monies in the transactions that were studied represent profits

25   to the bank?

1          MR. GOLDSTEIN:  That, your Honor, is a representation

2     from the bank that we believe should be credited.  The number

3     represents profit in a very narrow sense, which is the

4     transaction fees that the bank charged in the course of

5     engaging in all of the illicit conduct, and not just for the

6     transactions that were willful but all of the transactions

7     during the time period violating US sanctions.  The bank has

8     estimated that, and in conversations with the bank's counsel,

9     we have no reason to doubt that $70 million is an accurate

10    number.  Certainly the benefit to the bank in a broader sense

11    in terms of relationships with customers and other broader

12    financial benefits to engaging in these transactions are not

13    included in that number, but in light of the obviously very

14    sizeable forfeiture amount, we believe that a fine that is

15    twice the actual transaction fee profit to the bank is an

16    appropriate measure for a fine.

17          THE COURT:  Okay.  Thank you.

18          So on the basis of the documents submitted to the

19    court and the answers to my questions today, I'm satisfied that

20    the plea agreement is appropriate and reasonable in light of

21    the charged conduct in this case.

22          First, the charge to which the defendant pleads

23    guilty, one count of conspiracy to commit an offense against

24    the United States for conspiring to violate the International

25    Emergency Economic Powers Act and the Trading with the Enemy

1    Act, is proper given the defendant's conduct.  The conduct

2    consisted of the covert processing and transfer of billions of

3    dollars to and from entities in Sudan, Iran, and Cuba, in

4    direct contravention of the US sanctions regime.  Defendants'

5    actions not only flouted US foreign policy but also provided

6    support to governments that threaten both our regional and

7    national security and, in the case of Sudan, a government that

8    has committed flagrant human rights abuses and has known links

9    to terrorism.  I find that the severity of the defendant's

10   conduct more than warrants the criminal charge to which had it

11   has pleaded.

12          Second, the forfeiture amount appropriately penalizes

13   the conduct I've just described.  While that sum is admittedly

14   large, at over 8 billion US dollars, it corresponds to the full

15   amount of the criminal proceeds traceable to the conspiracy,

16   and as I understand from the submissions to the court and what

17   I've heard today, this bears a direct relation to the conduct

18   at issue.  In addition, the forfeiture amount will surely have

19   a deterrent effect on others that may be tempted to engage in

20   similar conduct, all of whom should be aware that no financial

21   institution is immune from the rule of law.

22          Third, for substantially the same reasons that I find

23   the forfeiture amount to be appropriate, I consider the fine of

24   140 million US dollars to be fair.  It represents double the

25   amount of profit generated by the bank's unlawful actions.  I

1    also find that the fine is consistent with the public policies

2    expressed in the US criminal laws and the Sentencing

3    Guidelines.

4          Finally, I consider that the terms of the five-year

5    probation are fair, particularly because they require the

6    defendant to enhance its compliance policies and rules, which

7    should help to ensure that any future unlawful conduct is

8    prevented.

9          Accordingly, pursuant to Federal Rules of Criminal

10   Procedure and in particular Rule 11(c)(1)(C), I approve the

11   plea agreement.

12         And I would now like to ask a question about the

13   proposed form of order you've submitted.  I have a preliminary

14   order of forfeiture from you.  Typically I would just sign an

15   order of forfeiture at the sentencing.  I understand that

16   certain consequences flow from my signing a preliminary order

17   of forfeiture, but I'd like to hear why I should sign such a

18   document now and not just wait until the sentencing.

19         MR. GOLDSTEIN:  Your Honor, the order of forfeiture

20   does make clear that if the court had not accepted the plea

21   agreement that it would not be effective, but pursuant to the

22   order of forfeiture, the bank would be required to pay the full

23   remaining amount of the forfeiture under the money judgment

24   within 30 days of the execution of the plea agreement, which

25   was 30 days as of June 30th, and so by so ordering the

E791bnpp

1    forfeiture order now, that would put that into effect.  It

2    would make it so that the government would then essentially

3    become the custodian of the forfeiture amount pending

4    sentencing of the court.  The government agreed in the plea

5    agreement, because of the potential unwarranted collateral

6    consequences to the bank's US financial managers that were

7    entirely unrelated to the conspiracy that's at issue here, to

8    adjourn sentencing for a period of time.  As a result of that

9    adjournment, which may be, you know, three, four, five, six

10    months, we believe that it's in the government's interest and

11    the public interest that the amount be forfeited and that that

12    be done now or within 30 days so that all that needs to happen

13    at sentencing is for judgment to ensue.

14          THE COURT:  Okay.  Thank you.  In light of those

15    representations, I will sign the preliminary order of

16    forfeiture, and I will docket it once we have a docket number,

17    which will be as soon as the information is filed.

18          Do the parties have a proposed date for sentencing?  I

19    know it's somewhat up in the air, given these other

20    contingencies.

21          MR. GOLDSTEIN:  I believe, in consultation with the

22    court's deputy, we ask that the court set a control date for

23    sentencing for October 3rd at 2 p.m., and if the Department

24    of Labor resolution has happened prior to that point, we would

25    expect to go forward and we would inform the court in advance,

E791bnpp

1   and if there's a reason to further adjourn it, we would also

2   inform the court in advance at that point.

3           THE COURT:  Okay.  So I will schedule the sentencing

4   for October 3rd at 2 p.m., but I'll await some communication

5   from you as to whether we're really going forward on that date.

6           Mr. Dirani, the bank and your lawyer will have the

7   right to speak at the sentencing on October 3rd.

8           Is there anything else we need to take care of today?

9           MS. SEYMOUR:  No, your Honor.

10          MR. GOLDSTEIN:  No, your Honor.  Thank you very much.

11          THE COURT:  Okay.  Thank you.  We're adjourned.

12          THE DEPUTY CLERK:  All rise.

13                          o0o

14

15

16

17

18

19

20

21

22

23

24

25